## THE PRESIDENT DIRECTORS AND COMPANY OF THE MIDDLETOWN BANK *against* MAGILL and others.

At the close of an act of the General Assembly, incorporating a manufacturing company, with the usual powers of such a corporation, it was provided, that *the persons and property of the members of the corporation should, at all times, be liable for all debts due by said corporation.* In an action of *assumpsit*, after the insolvency of the corporation, for money advanced on its notes, against those who were members at the time the debt was contracted, but had transferred their stock before the commencement of the suit, it was held, that the defendants were not liable.

This was an action of *assumpsit,* to recover certain sums of money, loaned, by the plaintiffs, to the defendants. There was one special count; to which were added the usual money counts. The suit was commenced on the 12th of *August*, 1820.

*Arthur W. Magill, John Russ, Lemuel Whitman, Ithamar Atkins* and *Samuel Williams,* named in the writ as defendants, pleaded, severally, *non-assumpsit;* and on this issue, closed to the court, the cause was tried in *Middlesex* county, *December* term, 1820. The court found the facts, and reserved the case for the consideration and advice of all the judges.

The case was as follows.    On the 24th of *May*, 1816, *Arthur W. Magill* was duly appointed agent of the *Middletown Manufacturing Company*, for the then ensuing year, and acted in that capacity, during the period of his appointment.    The company having a running account at the *Middletown* bank, he, as agent, on the 16th of *July*, 1816, for the purpose of maintaining the credit of the company at such bank, and obtaining discounts, as its exigencies might, from time to time, require, addressed a letter to the cashier, containing a list of the stockholders of the company, which included all the present defendants, promising to give notice of all transfers made during the indebtedness of the company to the bank, and giving an extract from the by-laws of the company regulating the mode of transfer; which letter was received by the cashier, on the day of its date.    The following notes, on the days of their respective dates, were executed by *Magill*, as agent of the company, and indorsed by *Alexander Wolcott*, and were soon after discounted at the bank, for the benefit of the company, *viz.* one note dated *July* 9th, 1816, for 2,500 dollars; one, dated *September* 6th, 1816, for 6000 dollars; and one, dated *September* 20th, 1816, for 700 dollars.    On the 29th of *October*, 1816, the cashier sent to *Russ*, one of the defendants, a letter, which was delivered to him, on the day of its date, notifying him of the existence of these notes, and that the bank looked to him, as one of the company, for payment.    The notes have never been paid, and have been owned and held by the plaintiffs, ever since they were discounted.

*The Middletown Manufacturing Company* was incorporated, by an act of the General Assembly, passed in *October*, 1810. It conferred the usual corporate powers, and, among others, the power of suing and being sued; of pleading and being impleaded; and of ordaining and putting in execution by-laws and regulations, relative to the transfer of shares in the stock of the company, and for the government of the corporation.    It limited the capital stock, and divided it into shares, payable by instalments, and subjected the stockholder to a forfeiture for want of punctuality; it provided for the choice of directors, and specified their powers and duties; it designated the business to be pursued by the company; it limited the amount of its debts; it authorized dividends of profits; and it contained some other provisions, suitable or convenient for the regulation of such a company, but not affecting any question arising in this case.    At the close of the act was the following clause: "*Provided also,*

Middlesex,
July,
1823.

Mid'n. Bank
v.
Magill.

and be it further enacted, that the persons and property of the members of said corporation shall, at all times, be liable for all debts due by said corporation." The act of incorporation was accepted, and the company organized according to its provisions. All the defendants were members of the company, and stockholders therein, at the times when said notes were respectively made and discounted. The company, in its corporate capacity, was wholly insolvent, before and at the time of the commencement of this suit; and so has ever since continued.

On the 31st of October, 1816, Russ and Whitman, two of the defendants, assigned all their shares of stock in the company to Magill; and they have never since been proprietors of any stock in the company.

The case was argued at Haddam, July term, 1822, by Sherman and Staples, for the plaintiffs, and Daggett and N. Smith, for the defendants; and after much deliberation by the court, was continued to advise. At this term, it was argued again, by the same counsel.

The counsel for the plaintiffs argued, in substance, as follows.

It is not denied, by the defendants, that the individual members of this company are liable for the debts of the corporation. But as this liability is expressed in general terms, in the proviso of the act, they insist, first, that it is not a joint, but a several, liability; that it can be enforced in equity only; and that it subjects the members to pay in proportion to the interest which they respectively have in the stock of the corporation:—and, secondly, if they are wrong in this, that the declaration embraces too many defendants; Russ and Whitman not being liable at all, as they were not members at the commencement of the suit.

If either of these positions is maintained by the defendants, the plaintiffs must unquestionably fail.

The resolution of these questions depends, entirely, on the construction of the proviso.

On the part of the plaintiffs, we contend, that its meaning would not be varied, if it were in these words: "That the person and property of the members of said corporation, shall, at all times, be liable for all debts due by said corporation, in the same manner as if this act had not been passed."

The rules adopted by the common law, and tested by the experience of ages, for the construction of laws and contracts, are not only imperative, but are, in every case, more safe, and more conducive to the advancement of right, than any theory built on the supposed inconvenience resulting from a given interpretation.    The following are applicable to this subject.

*Middlesex,*
July,
1823.

Mid'n. Bank,
*v.*
Magill.

" When a statute directs any thing to be done *generally,* and does not appoint any special manner, it shall be done according to the course of the common law."

" Acts of parliament, in what they are silent, are best expounded according to the use and reason of the common law."

" In all doubtful matters, and *where the expression is in general terms,* statutes are to receive such a construction as may be agreeable to the rules of the common law, in cases of *that nature ;* for statutes are not presumed to make any alteration in the common law, further, or otherwise than the act expressly declares : therefore, in all general matters, the law presumes the act did not intend to make any alteration ; for if the parliament had had that design, they would have expressed it in the act."    6 *Bac. Abr.* 383. *Gwil.* ed. *and the cases there cited.*

It is clear, on the one hand, that without the proviso, the defendants would not be liable at all, and that creditors could enforce their claims against the corporation only.    And on the other, it is equally clear, that, had there been no incorporation, all persons who were members of the company when the debt was contracted, would be jointly liable as co-partners.    The legislature, in qualifying this act by the proviso, could have no other purpose, than to leave the security of creditors unimpaired.    The principal mischief resulting from the bestowment of corporate powers on a manufacturing or trading company, whose business requires extensive credit, is, that creditors are thereby deprived of all security, except such as the corporate property may afford.    They add nothing to the price of articles sold, or to the interest of money, in consideration of this hazard.    The company go into market with the same advantages to buy or borrow, as other individuals.    If their business is prosperous, the individual stockholders have all the gain ; but if disastrous, the creditor, without any premium for his risque, must sustain a loss to the whole amount of his demand, except the pittance sometimes saved from the wreck of their affairs. This is unjust ; and is known to have been the principal ground on which applications for charters, by trading companies, have, in this state, been met, and firmly resisted.    The legislature, there-

fore, in granting corporate powers, have insisted on the very plain and just condition, that the rights of creditors should not be impaired, by depriving them of any security or advantage, to which they are entitled at common law. This was the only object of the proviso in this charter ; and, by the familiar rules already cited, is its only warrantable construction. To the question, *what* individuals are liable, and in *what manner*, the common law replies, "those are *jointly* liable, *by whom the contract was made ;*" and answers in the negative to the absurd enquiry, whether a liability to pay can be alienated by the debtor. To construe the liability several and *proportional*, would be contrary to all analogy. Each joint partner, indeed, contributes his proportion to a common loss ; because, from the nature of the contract *as between each other*, he is liable in that ratio. In forming such an association, the amount of capital furnished by each, is known to every other, and is most generally, the stipulated rule of sharing profit and loss. But when a body or association of men contract with a stranger, he is not advised of their several shares of stock ; and in every such case, hitherto known, all are jointly liable. The reason of this rule applies as forcibly to this manufacturing company, as it would, had there been no incorporation. Even in this state, comparatively few, with whom such a company transact business, know whether they are incorporated or not. Their charter is a mere private act of the legislature, and as unknown to the commercial world as secret articles of copartnership. As such a company form extensive connexions in other states and countries, to absolve them from the common obligations of partnerships, would be a species of legislative fraud. Those who deal with them, trust the responsibility of the individuals, who compose *the house ;* and the general usage and law of trade, warrant such a confidence. The secret articles, which regard their mutual rights and responsibilities, whether merely conventional, or sanctioned by legislative authority, are alike unknown and unregarded, in their connexions with others.

But it has been said, that even if we take away the artificial and technical protection from suit, which the defendants would have, were there no proviso in their charter ; had the legislature organized them, in the form they have, and not made them a body corporate ; that such is their peculiar constitution, that they would not even then, have the attributes or liabilities of a partnership. In order, however, to make this ground available, it must be further alleged, that, in the case supposed, the indi-

viduals would not be jointly liable for the debts of the company at common law; and this, were they not partners, would, indeed, be a legitimate consequence. So much stress was laid on this reasoning, upon the former argument, that it may be proper to attend, in detail, to the several considerations which have been urged in its support.

*Middlesex,*
July,
1823.

Mid'n. Bank
*v.*
Magill.

It is true, that the charter has so modified this association, that it has not exactly the same characteristics as a general trading company at common law; but it has not *deprived* the company, collectively or individually, of any one power, which is *essential* to a copartnership, although it has *conferred* some privileges, which they could not create for themselves; as perpetual succession, a right to sue by the corporate name, to hold real estate as personal, &c. It now has, by the charter, a double character, that of a corporate body and a copartnership. The first is *conferred*, for the benefit of the concern. The second is *left*, by means of the proviso, for the security of creditors. Were they unincorporated, the single fact, that they conduct business for their common benefit, and at their common hazard; that they share in profit and loss; would make them partners. This act has imposed no restraints, which might not be effected, by articles. It has been said, that in a partnership, each has power to bind the company; but this power is implied only, and may be prevented, by special stipulation, or by express dissent of the other partners, previously made known to the creditors. Such power, therefore, is not *essential* to a partnership. Lord Viscount *Gallway* v. *Matthew* & al. 10 *East*, 264. So, a member, by transferring his stock, may here introduce a new partner. The same might be done, in any other case, if so stipulated in the articles, and the partnership continue between those who remain. The remark, that the company cannot dissolve without the consent of the legislature, is not correct; for they may, at any time, surrender their charter. 1 *Bla. Com.* 512. It is difficult to conceive, however, if the legislature should grant that disability to an unincorporated company, how it could shield them from the demands of creditors. The inability of any member to dispose of the funds of the partnership, might be effected, in any case, by mutual stipulation. The succession, on the death of a member, of those entitled to his shares of stock, by the statute of distributions, whereby they become members of the corporation, if conferred by the legislature on an unincorporated company, could not impair or affect the liability of the partners to fulfil the contracts of the firm.

Infants, indeed, would not be liable for any contract of the company; because *they* could make none, any more in the case supposed than in this. Upon our construction, the individuals are liable in the same manner only, as if this act had not been passed; and infants are of course exempted. So far as the common property is bound for the contracts of the corporation, they may be affected, and no farther. To subject them *in proportion to their stock*, as contended by the defendants, regardless of their inability *to contract*, would be a stretch of legislative despotism not to be endured. But representatives of a deceased partner, who are *sui juris*, consenting to receive stock under the statute of distributions, stand on the same ground, in law and justice, as any other members of the corporation.

It was insisted, that a several and proportional liability will satisfy the *words* of the charter; an observation, which ought not to be addressed to a court whose object is to enforce, and not evade, the *intent* of a legislative act. Why so construe the proviso as to impair the security of creditors, when its sole purpose was to leave that security unimpaired?

It has been contended, that our construction is incorrect, because its *consequences* are such as no wise legislature could deliberately intend. This species of argument, grounded on mere hypothesis, though sometimes admissible, is always dangerous; and is never to be regarded, when, as in this case, it is put forward to repel the application of sound and settled rules. Men cannot be relieved from obligations voluntarily assumed, because the performance of them is inconvenient. Mutual confidence is reposed in every partnership; and in every great concern, partners are liable to ruin, by the unskilfulness or dishonesty of their associates. But, because the *consequences* of this sort of mercantile contract may be, and often are, disastrous, courts have not been called on to deny its legality in general, or relieve against particular misfortunes, resulting from unwise or improvident articles, which the parties have advisedly adopted.

By our construction, those who were members when the contract was made, are jointly liable for the whole debt, and will so continue, notwithstanding any alienation of their stock. The words "at all times" corroborate this construction, and are opposed to the propositions, that the liability does not commence 'till the company is insolvent, and that it ceases with the membership of the individual. A creditor may, at any time,

sue the corporation, as such, or the copartnership, as such, at his election. This, it is insisted, will lead to *consequences,* which prove it to be erroneous ; and on the former argument, the defendants contended,

*Middlesex,*
July,
1823.

Mid'n. Bank.
*v.*
Magill.

1. That by this construction, the servants of the company and others, whose demands are accruing from day to day, might commence, after a lapse of time, as many suits as there had occurred changes in the members of the company, as every such change dissolved the old copartnership, and made a new one. They *might* amount to hundreds in a year.

An obvious reply to this, and every other remark of the kind, is, that if the stockholders were apprehensive of oppression from this source, they might have refused their charter. But they were, very reasonably, unalarmed, by such an apprehension. Common care in contracting debts, and common punctuality in paying them, would, as they well knew, prevent any creditor from resorting to this self-destructive measure.

2. If a stockholder should sell out, while the corporation was indebted, and afterwards be compelled to pay the whole, he could get no remuneration.

This is an unsound position. Although a stockholder in this company, is, *at all times,* liable to a creditor, in the same manner as a common partner, yet he is so liable " for the debts *of the company* ;" and, of course, entitled to indemnity from the corporation, whose debt he has been compelled to pay. Should the funds of the corporation, which is first liable to him, be exhausted, chancery, on the same principle as in the case of sureties, would compel a proportional and just contribution from the other members, to make up the deficiency. The rule in this case, is too obvious and well established, to require proof or illustration.

3. *A.,* while the company is indebted, sells to *B.* The creditor has his election to sue the corporation, or its members. If he sues the members, *A.* must contribute to the payment, and can have no remedy against *B.* ; and if he sues the corporation, the property which *B.* has purchased, is taken by the creditor, and *B.* will have no remedy against *A.*

A sufficient reason why the seller and purchaser should have no remedy as against each other, is, that each is presumed to have known, at the time of the sale, the terms of the charter, and the state of facts, and to have calculated his price accordingly. But, if stock is sold on just principles, the purchaser would consider all debts as payable from the corporate proper-

ty. Then, if the creditor sues the corporation, his calculations will not be disappointed, and if he sues the seller, it will ultimately come to the same result, as the latter is entitled, as we have already shewn, to call on the corporation for indemnity. This objection, therefore, is as groundless as the last. Indeed, all these objections apply equally to every great *unincorporated* trading company in this nation, whose stock is in shares, and subject, by their constitution, to be transferred, at the pleasure of the owner.

So much stress has been laid on certain decisions in the state of *Massachusetts*, that we think they merit a careful attention. We view them in a different light from that in which they are considered, by the defendants. In our judgement, they recognize principles, which, if admitted, conclusively prove the grounds which we take for the plaintiffs. In 1808, the legislature of that State enacted, "that whenever any execution shall issue against any manufacturing corporation thereafter created, and such corporation shall not, within fourteen days after demand made upon the president, treasurer or clerk of such corporation, by the officer holding the execution, shew to him sufficient real or personal estate to satisfy and pay the sums due on such execution, the officer shall serve and levy the same upon the body or bodies, and real or personal estate or estates, of any member or members of such corporation."

In the case of *Childs* v. *Coffin* & al. 17 *Mass. Rep.* 64. a question arose on the construction of this statute, and it was decided, that the members mentioned in the act, must be such *at the commencement of the suit*; and, consequently, that execution, in that case, was not lawfully levied on the estate of one who *died before the suit was instituted*. And in the case of *Marcy* v. *Child*, in the same volume, *page* 330., when the same statute was under consideration, the court decided, that every member of a manufacturing corporation, against which judgment was rendered, *was virtually a judgment debtor*; and liable to execution, notwithstanding any alienation, made before the time of levy, for the purpose of defeating the creditors of the company; and that, by a subsequent act of 1817, *c.* 183, providing that the bodies and estates of those, *who were members at the time any debt accrued*, as well as those mentioned in the former statute, should be liable,—even the *bona fide* transfer of shares would not relieve the member from any debt, which *accrued* while he was a member of the corporation.

The defendants have relied, with great confidence, on that

opinion of the court, which considered those members only liable under the statute of 1808, who were such *at the commencement of the suit.* The court, however, adopt that construction on a ground which does not exist in this case, but on a *principle*, which fully authorizes the construction, which we give to the proviso in this charter. All who were members, at the time when the right of the creditor, by virtue of the statute, first accrued against them, are held not only liable, but incapable, even by a *bona fide* transfer, of alienating that liability. But by the language of the statute of 1808, a *judgment* against the corporation, if not satisfied within fourteen days after demand, might be enforced, by execution against the members. This language necessarily leads to the inference, that those members only, who were *parties to the judgment*, could be intended. Such was the opinion of the court; and they consequently consider none liable, who ceased to be members, before the commencement of the suit. But the proviso in question has no such language; and we are not, therefore, to apply to it an opinion grounded wholly on the peculiar structure of another act. That act has created such a privity between the corporation and its members, as to make the latter liable on a judgment against the corporation. Ours has not. There lies a wide distinction. In *Southmayd* v. *Russ* & al. 3 *Conn. Rep.* 57., Judge *Bristol*, speaking of the liability of the members of this company on a judgment had against the corporation, expressly says, "that the defendants were neither parties nor *privies* to the proceedings against the *Middletown Manufacturing Company;*" and in this concurred with the majority of the court. The *only* ground, therefore, on which the court in *Massachusetts* fixed on the commencement of the suit, as the point of time when membership was essential, has been, by this court, explicitly denied, in regard to this charter. But the court in *Massachusetts* recognize every principle we contend for. They subject the members to a joint liability; and never intimate the idea of a several and proportional contribution. That, indeed, was virtually denied, by this court, when they held, that our relief was not in chancery. 3 *Conn. Rep.* 135. The Chief Justice, in the supreme court in *Massachusetts*, in the case of *Marcy* v. *Clark*, giving the opinion of the court, expressly adopts the principle of *partnership*, in which every proposition we advance is necessarily involved, and he fortifies his reasoning, by the same considerations of policy, and ascribes to the legislature the same general *intent.* On page 334. he says :—" The legislature have

*Middlesex,*
July,
1823.

Mid'n Bank
*v.*
Magill.

thought proper, and, we think, wisely, to subject the property of all members of these corporations to a liability for the debts of the company. By this, in fact, *they only continue the principle of* COPARTNERSHIP *in operation ;* and considering the multitude of corporations, which the increasing spirit of manufacturing gives rise to, regard to the interest of the community seems to require, that the individuals, whose property, thus put into a common mass, enables them to obtain credit universally, should not shelter themselves from a responsibility, *to which they would be liable as members of a private association.* Since this statute was enacted, all who deal with such companies, look, for their security, to the *individual* members, rather than to the joint stock; and to suffer those members to avoid their responsibility, *by parting with their stock,* would be to deprive the creditor of a VESTED RIGHT, and of the means of satisfying his debt."

We gave *Russ* notice, on the 29th *October,* 1816, that we should look to him for payment. The defendants admit, that he and *Whitman* were then liable, either jointly or proportionally; and that, if we had instituted a proper suit, on that day, they could not have resisted the demand. Two days afterwards, they sold out of the company. Is it to be endured, that this act of theirs should "deprive the creditor of a *vested right?*" Would that be countenanced, by any rule of law or morality?

In *Bond* v. *Appleton,* 8 *Mass. Rep.* 472. a question arose on the construction of the charter of the *Hillsborough* Bank, in the State of *New-Hampshire.* By that charter " the original stockholders, their successors, assigns, and the members of said corporation," are made liable to the holder of any bill, on the refusal of the corporation to pay on presentment and demand, and the member or members, who should be compelled to pay, were authorized to recover of the " *remaining* members," in proportion to their respective amounts of stock. The plaintiff held several bills, on which payment had been demanded, and refused. The defendant was once a stockholder, but had ceased to be a member of the corporation, about fifteen months before the demand, and owned no stock when the plaintiff became holder of the bills. The corporation, consequently, had never been liable to the plaintiff, while the defendant was a member. To construe the words of the charter so as to subject him, would violate all the principles for which we contend. But the court held, that those were liable, by force of the charter, who were

stockholders when the demand and refusal took place ; not those *only*, who were members at the commencement of the action ; and considered the restriction of the remedy over, to the " *remaining*" members, as indicating the intent of the legislature, that those who did not *remain* members, should not be liable at all. No pretence was set up, that the liability to the creditor was several and proportional ; and the opinion that *all* were liable, who were members at the time of refusal, evinced the impossibility of selling out an obligation to pay, which had once attached. That case confirms all which it involved, of the principles we contend for here ; although the peculiar nature and phraseology of the charter, demanded a construction, applicable, in some respects, to no other case.

We shall search in vain for foreign adjudications to exonerate the defendants from this demand. The decision of this court, in the case of *Southmayd* v. *Russ* & al. 3 *Conn. Rep.* 57. is of binding authority, and sanctions our construction of the charter. The concurrent opinion of the Chief Justice, and of Judges *Chapman* and *Brainard*, embraces every proposition, which we have endeavoured to support. The majority of the court there say, expressly, when commenting on this same proviso, " that the entire phrase denotes, with perfect clearness, that so soon as a debt is contracted, it becomes obligatory on the natural persons comprising the corporation, as contra-distinguished from the legal or artificial person." " The *original* and *absolute* indebtedness of the members demonstrates the manner of responsibility. They are answerable *precisely* as if there had been *no incorporation*. The debt is no sooner incurred, than the liability commences." " Their creditors possess the rights, and are entitled to the remedies, which are furnished, by established law, against *an ordinary copartnership*."

The counsel for the defendants remarked, That the debt in question having been contracted, by the corporation, for a consideration received by the corporation, the corporation alone must be liable to pay such debt, unless it is very clearly shewn, that the liability has devolved on some one else. The members, not being original debtors, are not liable on the ground of contract ; and aside from the proviso at the close of the act of incorporation, the plaintiffs could have no pretence of claim against them. The case, then, turns on the construction of this proviso. That the literal expressions must be controuled, by some principle of construction , is undeniable ; for the phrase " members of said corporation," without regard to construc-

*Middlesex*,
July,
1823.

Mid'n Bank
*v.*
Magill.

*Middlesex,*
July,
1823.

Mid'n Bank
*v.*
Magill.

tion, would embrace all persons, who, at any time, during the existence of the corporation, were members of it,—as well those who were members before and after the debt was contracted, and who had no knowledge of it, as members at the time. If, then, from the nature of the case, we are compelled to resort to construction, of what character ought that construction to be ? Should it not be such as best to effectuate the great object of the petitioners in seeking, and of the legislature in granting, the act of incorporation ? Undoubtedly, it must be. And so far as the terms of the proviso are in derogation of the rights given in the body of the act, and of the general rights of all corporations, they must receive a strict construction.

They then contended, 1. That the stockholders were, at no time, jointly liable to the creditors of the company, as copartners. The proviso does not, in terms, declare, that they shall be so liable. If they are to be subjected in this manner, it must be because they are placed, by the body of the act, or by the terms of the proviso, in a condition so analogous to that of copartners, that it is reasonable and proper that they should be liable like them. It becomes important, then, to enquire, in what respects the condition of these stockholders agrees with, or differs from, that of copartners.

In the first place, they have not a common origin. A copartnership is formed, by the voluntary association of individuals. The body of which the stockholders in question are members, was created by the act of the legislature.

Secondly, a corporation and a copartnership have different modes of existence. In the former, the individual character of the members is entirely lost, so that they do not appear, and are not named, when the corporation performs its most solemn acts ; as when it sues or defends in a court of justice, executes a deed, &c. In the latter, the individual character of the members is not entirely lost ; for the copartnership can sue or be sued only in the names of the individuals, who compose it ; nor can it execute a deed, except in their names, and under their hands and seals.

Thirdly, a corporation and a copartnership are different with respect to their duration ; the former being perpetual, by succession of members ; the latter, admitting of no succession, and continuing for a limited or an indefinite period, which can never exceed the concurrent lives of all the original members.

Fourthly, a corporation and a copartnership are subject to dis-

solution in different ways. The former can be dissolved only by the legislature. The latter may be dissolved, at the pleasure, and by the act, of the members alone. In this case, moreover, it was perfectly competent for the legislature (they having reserved that power) to dissolve the corporation against the will of the members ; but such an interposition of authority to destroy a copartnership, would be opposed to common right, and the first principles of sound legislation.

Fifthly, a member of this corporation, by want of punctuality in the payment of instalments, forfeits his shares, and, of course, his right of membership in the company. No such forfeiture is incident to a copartnership.

Sixthly, in this corporation any member, without the assent of the others, may transfer his interest, and by such act, at once terminate his own membership, and introduce a new member. This could not be done in a copartnership.

Seventhly, no member of a corporation, as such, can bind the corporation, by his contracts, or admissions. The contract of one partner, in the copartnership name, binds the copartnership ; and he may subject the copartnership, by his acknowledgment of a debt barred by the statute of limitations, or by his admissions generally.

Eighthly, the property of a corporation is vested in the artificial person, and so continues, notwithstanding a change of all the members. The funds of a copartnership are governed by very different laws.

Ninthly, in this corporation, the amount of capital to be held, and of the debts to be contracted, is limited ; and the nature of the business to be transacted, is prescribed. A copartnership is subject to no such regulation.

In all these respects, the argument derived from analogy to support the plaintiffs' claim, not only fails, but leads to a contrary result. If the corporation in question and an ordinary copartnership originate from different sources, exist in different modes and for different periods of duration, and are subject to dissolution in different ways; if, in the two cases, a transfer of interest is made in a different manner, upon different principles, and attended with different consequences ; if the company has different powers in relation to its members, and the members have different powers in relation to the company ; if their funds and business,—all they have and all they do,—are subject to different regulations ; we may reasonably conclude, so far as the

*Middlesex, July, 1823.*

Mid'n. Bank *v.* Magill.

argument from analogy is concerned, that the members are liable to creditors in a different manner.

2. That the stockholders were not joint debtors with the corporation. If they were, an action brought against the stockholders, without joining the corporation, or *vice versa*, would abate. It is clear, that an action brought against them jointly, could not be sustained. It is equally clear, that separate actions could not be sustained, at the same time, against the corporation and the members, on the ground of a joint indebtedness. This demonstrates, that they are not jointly liable.

3. That the members liable for the debts of the company, by virtue of the proviso, are those who were members at the time of bringing the suit. A party can never sustain an action, unless the right of action exists when he brings his suit. The charter makes the "*members*" of the company liable. But those persons, who have legally, and *bona fide*, transferred their shares, before the commencement of the action, are not, at that time, members. The legislature must be presumed to have contemplated this state of things, when they authorized a transfer of shares. And if members of any description are to be subjected, it is perfectly reasonable and fit, that the burden should fall upon the present members, who are to be benefitted, by extinguishing the claims against the company, rather than upon those who have ceased to have any interest in the concerns of the company. A *transfer of stock* in an incorporated company, *ex vi termini*, implies, that the purchaser takes the place of the seller. He has all the rights, and all the benefits : why should he not be subject to all the liabilities ? Suppose *A*. is a stockholder in a manufacturing company, the capital of which is 100,000 dollars. The company gives a note for 10,000 dollars, gets it discounted at the bank, and receives the avails. Before the note comes to maturity, *A*. sells his stock to *B*. ; *B*. then participates in the benefit of the money for which the note was given, and *A*. derives no benefit from it. Who, if either, ought to pay the note ? Or suppose the amount of the note had been lost, by accident, or in business, before *A*. sold his stock ; would not the price of the stock be reduced in the same proportion ? Would not *B*. pay as much less for his stock as his proportion of the note would amount to ? Who, then, if either, ought, in that case, to be liable for the note ? Suppose a person purchases the whole stock of the corporation, and appropriates its funds to his private use ; shall the old members be liable for the debts, and he be exempt ? In *Child* v. *Coffin* &

*Middlesex,*
July,
1823.

Mid'n Bank
*v.*
Magill.

al. 17 *Mass. Rep.* 64. the provision of the statute was, that a creditor of the corporation in a certain case, might levy his execution upon the body or estate " of any member or members of such corporation." "This," the court said, "must be understood of such as were members at the time of the commencement of the action, and of those only;" and the person, in that case, whose estate had been levied upon, having ceased, by death, to be a member of the corporation, before the suit was brought, it was held, that his estate was not liable, and no title was acquired by the levy.

4. That if the preceding position were incorrect, the members liable were those who were members at the failure of the corporation. While the corporation is solvent, there is no occasion for resorting to the members. When it fails, the creditor is to look to those who are *then* members. In *Bond* v. *Appleton,* 8 *Mass. Rep.* 472. 476. the persons made liable were " the original stockholders, their successors, assigns, and the members of the corporation; words, to say the least, as extensive as those of the proviso in question; and yet the court held the reasonable construction of them to be, such of the original stockholders, and of their successors and assigns, as were members of the corporation when payment was refused.

The phrase "at all times," is not opposed to the construction for which we contend. Those persons, who are liable, as *members,* within the meaning of the proviso, are, undoubtedly, *at all times* liable : The only question, is, who those members are.

5. That whatever members were liable, whether those who were such, at the time of contracting the debt, or at the commencement of the suit, or at the failure of the corporation,— they were liable only according to their interest in the stock. First, this construction is conformable to the letter of the proviso. Secondly, it is conformable to the equity of the case. Thirdly, it is in accordance with the general object of the act of incorporation, and its most prominent provisions. All the rights and profits of the several stockholders are in proportion to the shares of stock they own. To say that they are liable *jointly,* is to say what the legislature have not said, and what they might easily have said, if they had so intended. There is no privity between the members. The legislature have thought proper to create a *several* interest in the stock. *A.* has no interest in *B.'s* share; and *B.* has none in *A.'s.* The share of one

*Middlesex,*
*July,*
*1823.*

Mid'n Bank
*v.*
Magill.

cannot be attached, or taken in execution, by process against the other.

The case of *Southmayd* & al. v. *Russ* & al. 3 *Conn. Rep.* 52. decided only, that the plaintiffs had not shewn themselves entitled to a *scire-facias* against the defendants. The remarks made by one of the judges, in assigning his reasons, relative to the manner in which the members of the company were responsible for its debts, were merely *obiter dicta*, which are not to be taken even as his judicial opinion, much less as the opinion of the other Judges who silently concurred with him in the result. Two of the Judges explicitly disclaimed the expression of any opinion on the subject.

HOSMER, Ch. J. *Arthur W. Magill* and others, having entered into an association for the manufacture of cloths, procured from the legislature a charter of incorporation. Apprehensive that a grant in the usual manner, whereby the corporate funds are alone liable to creditors, would be injurious to the community, the legislature annexed to the charter this proviso, "that the persons and property of the members of said corporation, shall, *at all times*, be liable for all debts due by said corporation." The notes in suit were made, when all the defendants were members of the *Middletown Manufacturing Company*; but by the transfer of their stock, two of them ceased to be such, before the insolvency of the corporation, or the commencement of the plaintiffs' action. Whether the two defendants alluded to, are liable on the notes, without which liability, the present suit cannot be sustained, is the general question to be determined.

That certain members of the corporation, are responsible for the company debts, is not susceptible of dispute; but the difficulty consists in ascertaining, who those members are. The plaintiffs contend, that the members of the company, are originally and absolutely liable for all debts, contracted by the corporation, *when they were members*, in the same manner as they would have been, had the persons associated proceeded on their purposed employment, without an act of incorporation. On the other hand, the claims of the defendants are numerous. They insist, that their liability is not joint, but several; in chancery only, and not at law; arising on the insolvency of the corporation, or at the commencement of suit, and not at the origin of the debt; and finally, that the corporation, alone

is debtor, and the remedy against the members only accessary and commensurate with the corporate funds.

The original and absolute liability of the members for the debts of the corporation, *contracted when they were members,* was expressly decided, by this Court, in the case of *Southmayd* and *Hubbard* v. *Russ* & al. 3 *Conn. Rep.* 52. The Court, according to the imperative requisition of the statute law, did not merely announce a result, but publicly assigned their reasons on the very point of controversy. Their opinion was in no sense *obiter.* As creditors of the *Middletown Manufacturing Company,* the plaintiffs had obtained a judgment for a debt against the corporation, and were endeavouring to enforce it against the members, by an action of *scire-facias.* It necessarily follows, that the only subject of enquiry was, *what is the remedy against the members of the Middletown Manufacturing Company, for a debt contracted by the corporation?* To this enquiry, the Court made answer, that the judicial writ of *scire-facias* could not be sustained, because the members were under the obligation of the original contract, on which *alone,* an action against them could be supported. The case is entirely analogous to that of an action of *assumpsit* upon a bond, determined against the plaintiff, on the specific ground, that the action should have been *debt:* in which event, it is presumed, that no lawyer would consider the decision as *obiter,* and for this invincible reason, because it is upon the direct and pertinent point of enquiry. On the same principle, the determination in *Southmayd* and *Hubbard* v. *Russ* & al., that the action against the members of the *Middletown Manufacturing Company* should have been brought on the original contract, directly and pertinently evinced, that the remedy by *scire-facias* was not sustainable. "The legislature," say the Court, "intended to invest the company with corporate powers, and so to limit them, that the responsibility of the members for the company debts should not be impaired. In other words, the incorporation was not to have any effect, on the subject of individual indebtedness. For the company debts the members were "at all times" to be liable. The original and absolute indebtedness of the members demonstrates the *manner* of their responsibility. *They are answerable, precisely, as if there had been no incorporation. The debt is no sooner incurred, than the liability commences.*"

Here I should pause; but a difference of opinion in the Court impels me to discuss the case *on principle.*

Before I enter upon a construction of the proviso to the act of incorporation, on which the whole controversy depends, I will advance certain established rules, by which the exposition must be guided. "Words are generally to be understood, in their usual and most known signification; not so much regarding the propriety of grammar, as their general and popular use." "As to the subject matter, words are always to be understood as having a regard thereto; for that is always supposed to be in the eye of the legislator, and all his expressions directed to that end." 1 *Bla. Com.* 59. 60. "The best construction of a statute is, to construe it as near to the rule and reason of the common law as may be, and when the provision is general, to subject it to the order and controul of the common law." *Stowell* v. Lord *Zouch,* 1 *Plowd.* 365. 2 *Inst.* 148. 301. *Thursby* v. *Plant,* 1 *Saund.* 240. *Miles* v. *Williams,* 10 *Mod.* 245. *Rex* v. Bishop of *London,* 1 *Show.* 455.

In the argument of this case, it was asserted, very mistakenly, that the proviso in question, was in derogation of rights already granted, and ought to be construed *strictly.* On this point, both the fact and the law were misconceived.

Before the proviso was introduced, no right had been conferred; but the body of the act and the proviso, both came into existence, *uno flatu.* The legislature declined granting the company those rights and privileges, which the body of the act contemplated; and to qualify it, in such manner, as to meet their views of justice and general convenience, the proviso was superadded, speaking this intelligible language; *take your charter, subject to this condition, or you shall not have it at all.* Thus much as to the fact.

The law on the subject in question, has long been established, and unquestionably is at rest. "If a proviso in a statute, be directly contrary to the purview of a statute, *the proviso is good, and not the purview,* because it speaks the later intention of the legislators." *The Attorney General* v. Governor of *Chelsea Water-Works, Fitzg.* 195.—6 *Bac. Abr.* 382. *Gwill.* ed.

The equity and common sense of this principle are manifestly incontrovertible. For the benefit of creditors, the proviso was annexed to the charter, and was a paramount and fundamental object with the legislature. To construe it strictly, by an inversion of principle, would contravene the legislative object; frustrate their anxious solicitude in behalf of creditors; and, virtually, nullify the proviso to the act of incorporation. For between a charter without a proviso, and one with a pro-

viso, restrained to the narrowest possible limits by construction, and controuled by the body of the act, *which it was made to govern*, what is the essential difference? From the premises it results, as a correct principle of exposition, and necessary to further the intention of the legislature, *that for the security and benefit of the creditors, the proviso must be liberally construed in their favour.*

On the application of the preceding principles, in this case, I am of opinion, that the members are subject to the same liabilities they would have been, had they associated for the purpose of manufacture, without a charter. In that event, the common law would have made all the members of the copartnership, who were such at the time of a debt contracted, responsible for the payment of it; and the same responsibility rests upon them, under the act of incorporation. *By the acceptance of the charter, the agent of the corporation became their agent, and the debts of the corporation, contracted, by him, their debts.*

It has not been claimed, on either side, that all the members of the corporation, from the commencement of it, to its dissolution, would be liable for the debts contracted. They are divisible into three classes, comprising those who ceased to be members *before* the indebtedness; or who were such at the origination of a debt; or who became members at a *subsequent period.*

In respect of the first class, it has not been, and, I think cannot, be urged, that they are subjected to any responsibility, for the debts originating *subsequent* to their membership. That the second class are debtors, and the only debtors, I shall endeavour to show.

It has been insisted, for the defendants, that the liability of the members, is not joint, but several. I have heard no argument, nor am I capable of conceiving any, by which such a proposition can be supported. It is opposed to the words of the proviso, which clearly substitute certain members jointly to the legal obligation for the payment of debts, in place of the corporation. It equally contravenes the common law, which considers the liability for a single debt, contracted by several persons, as joint, and capable of enforcement, against all the individuals. It is contrary to the liberal construction of the proviso in favour of creditors, that established principle demands, and casts on them the hazard of loss, by the insolvency of one or more of the debtors, which the contract has devolved

on the company. And finally, it is opposed to all analogy, and to the nature of the credit, which is given to the debtors generally, and not to them singularly, or in proportion to their respective shares of the joint stock.

That the remedy against the members, is in chancery, and not at law, is a mere *gratis dictum,* and dependant solely for its force on the preceding proposition. If the members were severally obliged, it then might be made a question, whether in avoidance of multiplicity of suits, chancery would not afford the requisite redress. But as the responsibility is joint, the extraordinary powers of this court, can no more be resorted to, than to enforce the collection of a joint bond or promissory note.

It has been said, that the liability of the members is suspended on the insolvency of the corporation. For this construction I am not able to discern any principle. The proviso subjects certain members of the corporation for its debts "*at all times.*" It contemplates an absolute and unintermitted responsibility, from the origin to the extinguishment of the corporation debts. The liability of the members, in the event only of the company's insolvency, is not absolute, but contingent; not unintermitted, but arising on a fact, subsequent to the creation of the debt. So far from existing "*at all times,*" it has no existence at any time, unless an uncertain event should happen. To sanction the construction insisted on, by the defendants, the court must first repeal a part of the proviso, and then substitute a conditional for an absolute engagement. The construction alluded to, is at war with the words, as well as with the reason and spirit of the charter. The intention of the legislature was not merely to secure the creditors from the hazard of the corporation's insolvency, but to continue the members a copartnership, or at least joint contractors at common law, as if no incorporation had taken place. At present, I shall take this proposition for granted, as it will be, more particularly, the subject of a future part of my argument.

That my observations on the material question in the case may be more condensed, and uninterrupted, I will, before I enter on them, reply to some arguments advanced by the defendants. It was said, that a mercantile company cannot possess such attributes, as the charter of incorporation has given; but the assertion was not supported. It is admitted, that the corporation has certain rights, not self-created, which, for the internal management of their concerns, the legislature has conferred

upon them. But, as was correctly insisted on for the plaintiffs, the charter has not deprived the members of any power essential to a copartnership. It is not my intention to enter minutely on a subject most satisfactorily discussed, in the argument to which I have alluded. I will merely advance certain incontrovertible principles, the right application of which must put the controversy on this point at rest. A partnership exists when two or more persons associate together in some lawful business, with a view to joint profit. It is a voluntary contract between more persons than one, for joining together their money, goods or labour, upon an agreement that the gain or loss shall be divided proportionably *Hoare* & al. v. *Dawes* & al. *Doug.* 371. *Grace* v. *Smith*, 2 *Bla. Rep.* 998. *Watson* on *Part.* 1. This is its radical and elementary principle ; and beyond this simple, fundamental truth, the partners may prescribe to themselves any terms not prohibited by law. These terms are matter of expediency ; and may exist or not, without affecting the essence of the partnership, comprised, as it is, in a joint agreement to perform business, for the acquisition of a joint profit. Save in this indispensible stipulation, the creditors have no interest ; for this it is, which alone subjects the partners to a joint responsibility. In the case of *Marcey* v. *Clark*, 17 *Mass. Rep.* 330. it was said, by the court : " The legislature have thought fit, and we think wisely, to subject the property of all members of these corporations to a liability, for the debts of the company. By this, in fact, they only *continue the principle of partnership in operation ;* and considering the multitude of corporations, which the increasing spirit of manufacture gives rise to, regard to the interest of the community seems to require, that the individuals, whose property, thus put in common mass, enables them to obtain credit universally, should not shelter themselves from a responsibility, to which they would be liable, as members of a private association. Since this statute was enacted," (and equally applicable is the remark to the *Middletown Manufacturing Company*) " all who deal with such companies, look for their security to the individual members, rather than to the joint stock." The opinion, thus expressed, considers the members virtually as partners, notwithstanding the incorporation ; and declares, what results almost with the force of a necessary inference, that they are so considered by the community, and credited in this character. It is unnecessary further to pursue this subject. Let it be supposed, that the members of the corporation, strictly speaking, are not partners. By the

acceptance of the charter, they jointly assume the payment of the corporation debts; and having held themselves out to the world under this responsibility, they are liable to creditors as joint contractors. This is the only material consideration; for as to their internal movements and obligations, they are personal to themselves, and in them the community has no concern.

An analogy between the liability of towns, and other strict corporations, and that resting on the members of the *Middletown Manufacturing Company*, has been supposed to exist; and was claimed, in the argument of this case. It is an unquestionable legal truth, that in relation to corporations in general, the members, as individuals, are never responsible for debt; and in respect of towns, and some other local corporations, in this state, the same observations are equally just. The liability is exclusively attached to the *corporate funds*, and not to the members of the corporation. As such incorporations are never insolvent, but, by taxation, may always replenish their exhausted treasuries, there exists an *established usage*, authorising the collection of debts, by distraining the property of individuals, who upon the corporation have a claim for their reimbursement. But generally speaking, against corporations, there is no remedy, except by a recurrence, in some legal mode, to their funds; and with respect to the *Middletown Manufacturing Company*, it is incontrovertibly clear, that were it not for the proviso in question, the members could never be subjected to any responsibility. It is the proviso, that *striking peculiarity*, which imparts rights to creditors, and renders the members liable to obligations, not existing in the case of an ordinary corporation. By necessary inference, it results, that the obligations resting on the members of a corporation, under the usual grants, are essentially dissimilar from those existing on the members of the *Middletown Manufacturing Company*; and that between them there is no analogy. An inference from one of these corporations, to the other, is entirely unwarrantable; and can have no other tendency than to mislead. This observation is the more necessary to be attended to, lest from the frequency, and almost universality of the usual incorporations, and the familiarity of the rules applied to them, the mind, either intentionally, or unconsciously, should make application of these rules to the subject under discussion.

By the proviso in question, "the persons and property of the members of the corporation, are, at all times, liable for all debts due by said corporation." What class of members is em-

braced by these expressions? Is it that class, which exists, at the contracting of a debt; or those who are members of the company, at the commencement of suit? The intention of the legislature, to which the company acceded, on the voluntary acceptance of the charter, when once ascertained, must definitely settle these questions. To determine this enquiry, I will recur to the words of the proviso, and attempt a construction of them with reference to their subject matter; and then will attend to the consequences of the two expositions that appear most correct, so far as they have a legitimate bearing on the matter in controversy.

*Middlesex,*
July,
1823.

*Mid'n. Bank*
*v.*
Magill.

1. The words are to be construed in reference to the subject matter.

*A. W. Magill* and others had entered into an association, or mercantile company, for the purpose of acquiring profit, by the manufacture of cloths; and to the legislature they applied, in order to obtain a charter of incorporation. It was extremely apparent, that this company, commencing a business new and untried, would require a large capital; and that it could not fail to want and procure extensive credit. With this subject matter in view, it was thought hazardous to the community to grant a charter, in the usual manner; as this would render the corporation alone liable for debts. The community required better security to protect them from the hazard attending the great credits, that undoubtedly would be given. With these facts in contemplation, a charter was granted, with the extraordinary proviso, the first, which, in this state, had ever been subjoined to an act of incorporation, that the members of the corporation should be liable, at all times, for the debts contracted. In view of these considerations, the words of the act in question must receive their construction. The expressions " the persons and property of the members of said corporation," detached from the subject matter of the grant, and construed *per se,* would impress the mind with the idea, that the actual members were intended. But when to this is superadded, " the debts due by said corporation,"—debts which would successively exist, contracted by a fluctuating body, whose members are frequently changed; it cannot readily be believed, that the liability was intended to be cast on the existing members at the commencement of suit. It would contradict all analogy of interpretation. Those who contract a debt become the debtors: and the debts contracted by the corporation, for which the members were made liable, must be considered, in the exercise of

common sense, guided by plain practical principles, as debts, contracted by the members. The contract of the corporation, and of the members, made by their mutual agent, necessarily are coetaneous; springing into existence in respect of both, by the same act, and at the same time; and inferring the same obligation. There is no incongruity in the construction, which supposes, that by the term " members," the legislature intended, not those who were such, at the bringing of suit, but those who were members at the contracting of debt. It is not required, that the expression, "the members of the corporation" should be construed literally, and restrictedly, but that it be expounded largely, if the subject matter referred to render it fit and reasonable; for the same words, when applied to different subjects, have different meanings. It is far from unusual, that a word, on the suggested principle, should be deflected entirely from its common intendment; and the term *"provisions"* in the law of *Edward* 3., enacted to repress the usurpations of the papal see, which word, by construction, was made to restrain the nomination to benefices by the pope, (a very peculiar meaning of the term) is both a proof and illustration of the remark. 1 *Black. Comm.* 60. When we proceed a step further, and consider, that the proviso in question was made for the benefit of creditors, in a manner new and contrary to all precedent, necessarily demonstrating this to be a favourite and indispensible object of the grant, and the cause without which it would not have been made; the correct construction of it becomes more decisively apparent. To attain this object, the security and benefit of creditors, the proviso, as already has been shown, must be liberally construed in their favour. This liberality of construction cannot be deemed excessive, when we limit it, by another established rule of exposition; and that is, that " the best construction of a statute is, to construe it as near to the rule and reasons of the common law as may be; and when the provision is general, (as in this case it is,) to subject it to the order and controul of the common law." *Vide* cases cited ante. The construction most beneficial for the creditors, harmonizes with the common law, and casts the obligation and liability for debts contracted on the members of the corporation, at the time the contract was made. While this exposition is just, in relation to the debtors, it is most favourable for the creditors. They always may know the persons in whom they confide, and judge whether they are worthy of credit; and, as was said, by *Parker*, Ch. J. 17 *Mass. Rep.* 334. in relation to a law, which ren-

dered the members of manufacturing corporations liable for the corporate debts, "all who deal with such companies look for their security to the individual members, rather than to the joint stock." The real condition of the incorporated company they may be unable to ascertain, as appearances sometimes are most flattering, when the circumstances of a corporation are perilous, and rapidly declining. The construction, which I have given the proviso, appears to be natural and obvious; and I am persuaded, that every person, on reading the charter in question, for the purpose of ascertaining the expediency of crediting the corporation, has entertained the same opinion. That this was its practical exposition, by the parties to the promissory notes in suit, is decisively apparent, from the letter of *A. W. Magill*, the agent of the corporation, to the President and Directors of the *Middletown Bank*, immediately preceding the loans. This is the obvious inference resulting from his furnishing the names of the members, and engaging to give information, if any material transfers of stock should be made. The words of the proviso, so far as I have pursued them, construed with reference to the subject matter, and expounded as near to the rule and reason of the common law, as its expressions will admit, support the general proposition assumed, that the members of the corporation, existing at the time of a debt contracted, are bound to pay it. If they are thus put under the obligation of the contract, they cannot exonerate themselves, by selling their stock, or in any other manner, except by performance of the agreement. That it was the intention of the legislature, to secure the interest of the creditors, by the proviso, has not been controverted. I am equally clear, it was their *precise object*, that the rights of the creditors against the members of the corporation, should not be impaired, by the charter, but that they should be subject to the debts contracted, as at common law. In this construction there is nothing inconsistent with the words of the proviso, supported, as it unquestionably is, by the considerations already advanced; but it contains an expression that greatly supports the exposition. The proviso affirms, that the members shall "at all times" be liable for the corporation debts. As all the members, throughout the existence of the corporation, were not intended to be responsible for every debt, it was proper for the legislature to designate what class of members should be liable. This they did, by a specific attribute, denoting, that they are the members, capable "at all times" of being debtors, from the origin to the extinguishment of the debt. To

*Middlesex, July, 1823.*

Mid'n. Bank, *v.* Magill.

Middlesex,
July,
1823.

Mid'n. Bank,
v.
Magill.

what persons does this description apply? Certainly not to those, who ceased to be members *before* a debt was contracted. It is equally manifest, that those are not embraced, who become members *after* a debt had originated; for in no intelligible sense can it be affirmed, that for such debt they "*at all times*" were liable. There was a time, when they were not responsible; the period which elapsed *after* the debt accrued, and *before* they became members. The words "at all times" are synonymous with the phrase *without intermission ;* and when the correlative is debt, the plain meaning is, that the debt and debtors coexist so long as both endure. The construction I have adopted is recommended by its perfect equity. With entire justice, the members of the company are subject to the same liabilities, which attend unincorporated associations. Their charter privileges, so far as respects their internal concerns, render them no less the debtors of their creditors, nor relax any of the just obligations they are under to those, who have entrusted them with their property. In this way, by leaving the individuals obliged to the payment of their debts, the legislature, with a laudable spirit of wisdom and foresight, intended to protect the community against a corporation, which, by putting much property into one common mass, with a view to extensive business, could not fail to acquire great credit. It would then become the interest of all, who should contemplate contracting with the corporation, to look to the individual members, rather than to the joint stock; and thus the members would bear, as they ought, the hazards of an untried business, and become the victims of their own disasters, in preference to their being fatal to their unfortunate creditors.

The construction given is necessary to meet the mischiefs contemplated by the legislature, and to impart that security to creditors, which reason and justice demand. No other exhibition of the charter will do this effectually. If the members are alone liable, who are such at the commencement of suit, the creditors have not the advantage of knowing who are their debtors, at the time of giving credit, nor until, by the refusal of payment, an action against them is actually instituted.

The construction I have given, has the merit of being obvious, and not far-fetched ; and founded, as it is, *on the rules and reasons of the common law*, it furnishes to every man a *familiar* and *certain* rule of action. The enquiries whether the members are jointly or severally held responsible, in chancery or at law ; and the other numerous questions in the case, if there

is any foundation for them; demonstrate, what I am very unwilling to admit, that there is no certain or well known rule of action, sufficient to guide those, for whose benefit the proviso was intended, to any safe mode of conduct.

*Middlesex*, July, 1823.

Mid'n Bank *v.* Magill.

That the liability to debt is cast on those who should happen to be members at the commencement of suit, is a construction for which I cannot perceive any sufficient ground. It is not warranted, by the words of the proviso construed with reference to the subject matter. *It reverses the rule of the common law*, and gives a strict interpretation against creditors in that very particular, in which the construction should be liberal in their favour. It imparts to the creditors against the members of the corporation, a conditional liability only to their demands, *provided suit is brought*, instead of that absolute and unintermitted responsibility, which the proviso contemplates. The construction is most favourable to the members, instead of being most favourable to the creditors. It is opposed to the equitable right of creditors to look for payment to those who were alone visible to them, and whom they alone could credit; and refers them *to future members*, whom they could by no possibility know or trust; and in this manner, it involves them in the hazard of a recurrence to those, who, not unfrequently, are found to be the stockholders of an insolvent corporation. That even this is some security must be granted; but that it is that plenary benefit, which the legislature most justly intended, I cannot admit.

In support of the defendants' construction, certain determinations of the supreme court of *Massachusetts*, have been cited; but, in my judgment, with an entire misconception of the ground of those decisions. To render them of any avail, they must have decided, that when a law renders " the members of an incorporation" liable for the corporate debts, the words alluded to, without regard to the other provisions of the act, necessarily include those only, who were members at the enforcement of the demand. No such principle was contended for, by counsel, nor recognized by the court. They merely give a construction to certain legislative acts, *from a view of the entire law*, which neither contains the words, nor comprises the object, of the proviso in question. Hence, it appears, that they furnish neither principle nor analogy applicable to the case under discussion. The sole basis of these decisions, is, that the words " members of a corporation," *coupled with certain other expressions*, and construed with reference to their peculiar subject

*Middlesex,*
July,
1823.

*Mid'n Bank*
*v.*
Magill.

matter, obliges those members of a corporation to respond, who are such, at the enforcement of the claim, or within a certain antecedent period.

The case first cited, was *Bond* v. *Appleton,* 8 *Mass. Rep.* 472. By an act of the State of *New-Hampshire,* establishing *Hillsborough Bank,* it was enacted, that if the corporation should neglect or refuse to pay any of their bills, when presented for payment, " the original stockholders, their successors or assigns, and the members of the said corporation," should be jointly and severally holden for the payment of them ; and that the members compelled to pay, should be authorized to recover of the remaining members of said corporation, their proportion of the sum paid. In expounding the statute, it was said, by the court, that the words of the law were very extensive, but that it was the reasonable construction of them, that *such* of the original stockholders, their successors and assigns, as should be members *when the payment of the bills should be refused,* were bound to make satisfaction, particularly because the remedy furnished them for reimbursement *was against* the *remaining members of the corporation.* By the subject matter of the entire law, and the very intelligible provision just referred to, the words, " *the original stockholders,*" were considered as limited to *such* of the original stockholders as should be members of the corporation, at the time when the payment of the bills should be refused. The soundness of the decision, I am not disposed to question. It is an established principle of exposition, that " in the construction of one part of a statute, every other part ought to be taken into consideration ;" and it is equally well settled, " that the general words in one clause of a statute, may be restrained, by the particular words in a subsequent clause of the statute." 6 *Bac. Abr.* 380. 381. *Gwill.* ed. *Rex* v. Archbishop of *Armagh* & al. 8 *Mod.* 8. It is difficult to conceive why the case of *Bond* v. *Appleton,* founded on expressions manifestly and essentially different from the one before the court, should be considered as analogous, or comprising a principle of decision, favourable to the defendants. On the other hand, it clearly appears, although *the members of the corporation* were made liable, that this expression was not confined to *actual members,* at the time of enforcing a demand, but was inclusive of those who were members at an antecedent period, and had ceased to be such ;—they were members when the debt originated. The obligation to pay having attached, they could not escape from it, by the disposal of their stock.

The case next cited, was *Child* v. *Coffin* & al. 17 *Mass. Rep.* 64. By a statute, passed in 1808, it was enacted, that whenever any execution should issue against any manufacturing corporation thereafter created, and such corporation should not, within fourteen days after demand made upon the president, &c. of such corporation, by the officer holding the execution, show him sufficient estate to satisfy and pay the sums due on such execution, the officer should serve and levy the same upon the bodies or estate *of any member or members of such corporation.* In construing the statute, it was said, by the court, that by its necessary intendment, it must be understood to include those, who *were members at the commencement of the action,* (against the corporation,) *and those only.* This determination was not conformable to the precise words of the law ; but was founded on the reason and spirit of its entire provisions. " The statute" (said *Parker,* Ch. J.) " makes every member of a manufacturing corporation, against which judgment has been rendered, *virtually a judgment debtor ;* and by force of the statute, the execution is *against every such member, although not named in the precept."* In this case, the words, " any member or members of such corporation," were enlarged, in conformity with the intendment of the entire law. In what consists the analogy between the case of *Child* v. *Coffin* & al. and the case before us ? The statutes are differently expressed, and the subject matter of them is essentially diverse. This, to every person who compares them, is so palpably apparent, that the question of original liability of the members, in the case before the Supreme Court of *Massachusetts,* could not have been made, without the most manifest absurdity. The case comprises these undoubted principles : that " a thing which is within the letter of a statute, is not within the statute, unless it be within the intention of the makers ;" *Reniger* v. *Fogossa,* 1 *Plowd.* 18. ; and that " the letter of a statute is sometimes restrained, by equitable construction ; in others it is enlarged ; and in others the construction is contrary to the letter." *Eyston* v. *Studd,* 2 *Plowd.* 465. 6 *Bac. Abr.* 386. 387. *Gwill.* ed. The determination, in applying these principles to a law, altogether different from the proviso in question, and on a survey of all its provisions, enlarged the literal effect of a particular expression. In what manner does the decision bear on the case under discussion ? I readily admit, that I am unable to discover.

In the case of *Marcy* v. *Clark,* 17 *Mass. Rep.* 330. the construction of the beforementioned statute was again the subject

of discussion.    The question said by the court to arise in that case, was, whether *Joseph Marcy* was a member of the company, at the time the goods were levied on by an execution against them.    The enquiry was made, at what time the individual should be a member, to make him incur the liabilty of the statute ; and it was determined, " that the execution might be levied upon him, who was a member *at the time of the levy.* Indeed, said *Parker,* Ch. J., no other construction could be given to the statute ; for none but a member was liable ; and one who had sold his share in the corporate property certainly did not continue a member.  *Under the statute we have been considering, those who are liable, must be members when the execution is levied.*"

Before I make the observations, which occur to me, on this case, I must be permitted to remark, with the greatest deference to the learned court, who made the decision, that I cannot reconcile it with the principle stated, and recognized by the court ; nor with the determination in *Child* v. *Coffin.* In the case just mentioned, it was said, that the law embraced "such as were members, at the time of the commencement of the action (against the company,) and those only ; and for this reason, that the court must give to the statute such a construction, as shall not go beyond its necessary intendment."    And in *Marcy* v. *Clark*, the court observed, that " the statute makes every member of a manufacturing corporation, against which judgment has been rendered, virtually a judgment debtor ; and by force of the statute, the execution is againt every such member, although not named in the precept.    Now, if the members at the commencement of the action, and those only, were embraced by it ; ( *p.* 65.) and virtually become judgment debtors ; ( *p.* 333.) and if, as was said ( *p.* 335.) " all who are members of the corporation, are virtually defendants in the action, and have an opportunity to be heard, in the form they have chosen, by joining the company ;" I cannot subscribe to the construction, that permits a *judgment debtor* to exonerate himself, by selling out his stock, and a person, *not a judgment debtor,* by purchasing it, to became liable on the execution.

But be this as it may, the determination, in *Marcy* v. *Clark,* has no relevancy to the case under discussion.    The statute authorises the officer holding an execution against the manufacturing company, if there has been a refusal of payment, to levy it on the bodies and estates " of any member or members of such corporation."    Admit, then, that in the opinion of the

*Middlesex,*
July,
1823.

Mid'n Bank
*v.*
Magill.

court, it could only be levied on *the actual members ;* what was the reason ? It was because the words of the statute were considered imperative ; and that there was nothing in the provisions or subject matter of the law, that authorised a controul of the literal construction. It is undeniable, that the express meaning of a law, is its true meaning, if there is nothing upon which a construction can be founded, shewing a different intention. But the question arises, is there such a similarity between the statute beforementioned, and the proviso in question, as to constitute an analogy, whereby the determination of one, is, virtually, a decision of the other ? Can it be believed, that the supreme court in *Massachusetts* would recognize this principle ; and if there had been a prior determination of the proviso in question, that they would admit it decided the construction of their statute law ? Are the *words* of the proviso and the statute, the same ? Certainly not. Is the *subject matter* precisely similar ? No one will pretend it. Were the *object* and *intention* of the two legislatures, identical ? It is far from being true. Nay, are the *principles of construction* applicable to these two subjects, the same ? It cannot be affirmed. I conclude, then, that the constituents of correct exposition, in the two cases, are manifestly and essentially diverse ; and that, from the construction of one, there results no aid towards the construction of the other.

It has been supposed to have been the intention of the legislature, by the act of incorporation, to render the corporation only the real debtor ; that the corporate funds should be considered as the essential resource ; and that the members, at the commencement of suit, should alone be liable, to the extent of the corporate property. On this construction the members are in the nature of collateral sureties to the corporation. It results, as an inevitable consequence, that if the corporation property is exhausted, the responsibility of the members has terminated. Neither the words of the charter, nor the reason and spirit of that instrument, furnish the slightest foundation for this construction ; but to both of them it is directly opposed. The proviso affirms, " that the persons and property of the members of said corporation, shall, *at all times,* be liable *for all debts,* due by said corporation." By the most clear and undeniable intendment of this clause of the charter, certain members of the corporation, are subjected to an absolute and unintermitted liability for *the corporate debts,* until they shall be paid ; and not, that the corporation shall pay its debts, if it be

*Middlesex*,
July,
1823.

Mid'n Bank
*v.*
Magill.

able.   But by the construction advanced, no members are absolutely responsible for the debts of the corporation; their responsibility being suspended on two contingences.   They are liable *after* the commencement of suit, if there has not been an exhaustion of the property of the corporation.   But until suit there is no liability : and even after suit, they are equally irresponsible, if no corporate funds exist.   They are under the obligation only of paying the corporate debts, so far as the corporation is able to make the payment; but if their ability is at an end, the liability of the members has likewise terminated.   This novel species of suretyship is reducible to this principle; that if the corporation shall not act fraudulently, but shall discharge the demand against it, until the ability to discharge is gone, the members are exonerated.   How nugatory and destitute of any beneficial operation in favour of creditors, is the construction!   Unless the corporation should refuse faithfully to perform its engagements, so far as it has the power of doing, the responsibility of the members would be useless, because it is gone; and to give it an importance, we must presume a fraud in the corporation.   Thus, by one compendious stroke, the proviso in the charter is construed, not merely with strictness, but the creditors are deprived of all security, except in the corporate funds; and the members, if there are no funds, or however trivial they may be, if they are honestly applied in payment of debt, are rescued from all obligation.   And thus, the words of the proviso, and the rules of the common law in the construction of the charter; the favourable exposition of the proviso in behalf of creditors; the equitable rights of creditors and obligations of debtors; and finally, the intention of the legislature in making a just provision for their benefit; are made of no avail.   To a construction, which, in my judgment, rests on no foundation; which reduces a provision resulting from the anxious solicitude of the legislature for the protection of the community, to a nugatory act, unworthy of their care, and instead of a shield to creditors, converting it into a sword to pierce them, by alluring and then disappointing their confidence, I cannot subscribe.

It has been strongly urged from the effects and consequences of the plaintiffs' exposition, that it is too unreasonable to be adopted.   Undoubtedly, this is a legitimate source of construction; but it must not be pushed to the length of demanding, that all possible inconvenience must be avoided, and the *Middletown Manufacturing Company* have imparted to them all

*Middlesex.*
July,
1823.

Mid'n. Bank
*v.*
Magill.

the priviliges of their condition, without being subjected to any disadvantage. *Qui sentit commodum, sentire debet et onus.* The security of the community must be regarded, as much as that of the company. It is peculiarly hard, that one partner should be subject to ruin, by the imprudent and fraudulent conduct of another; but this is sometimes the result. Fortunately for us, we are not left to that unlimited discretion on this subject, which not unfrequently has led the most powerful minds into great error. There are rules founded in common sense, and established by law, which, when rightfully applied, will lead to a correct result. The direct and obvious consequences of a law are voluntarily assumed, and constitute no reason for varying its construction; and of as little avail are consequences infrequent, remote or productive of little inconvenience. It is only in doubtful cases, when the other rules of legal construction fail, and the consequences are unreasonable or absurd, that this kind of argument is resorted to. 1 *Bla. Com.* 61. *The Queen* v. *Simpson*, 10 *Mod.* 344.

Under the guidance of the preceding rules only, let the consequences of either construction be contrasted. Those on which reliance has been placed, by the defendants, may be classed under the following heads. 1. If, under the plaintiffs' construction a stockholder sell his stock, and is compelled to pay a corporation debt, he can obtain no reimbursement. 2. If a suit is brought, and judgment is had, against the members, the vendor must contribute to the payment; and if the suit is against the corporation, the property of the vendor will be taken, and he will be remediless. 3. The introduction of a new member into the company, and the secession of an old one, will constitute a new class of members; which will render necessary as many suits, as there are changes in the members of the corporation.

The first consequence objected, is without foundation. The vendor, in the case supposed, will have remedy against the corporation, as well as against those members, whose debt has been paid.

With regard to the second, as both vendor and vendee must be presumed to know the obligations arising under the charter, the objected consequence will always be voluntary and anticipated; and, therefore, is of no weight. *Volenti non fit injuria.*

And in respect to the last objection, I repeat, the consequence is voluntary and foreseen, and will seldom arise, if common prudence is exercised in the making, and common punctuality

in the payment, of the corporation contracts.   If there are some inconveniences arising, they are the price paid for the charter; and the last objection seems more proper from the mouth of the creditors, than from the debtors.   *They* will be the principal sufferers, if inconvenience there is, from the subdivision of their demand.

The importance, which it has been attempted to give to the supposed effects and consequences enumerated, to me appear to be factitious.   They are the consequences, which result from the common law, when applied to every unincorporated manufacturing company;  and will equally result in the case of a copartnership for any commercial purpose, if in their articles they adopt the same provisions, which the *Middletown Manufacturing Company* here thought proper to do.   This consideration decisively shows, that the argument of the defendants from the effects and consequences, has no real weight.

In the state of *Massachusetts*, it has been found necessary to make an act, relative to manufacturing corporations, attended, so far as I have been able to learn, with the same results, which the defendants have so strongly deprecated;  and yet the supreme court of that state, have considered the law as founded in wisdom.   In the case of *Marcy* v. *Clark*, 17 *Mass. Rep.* 335, after a discussion of a preceding statute, it was said, by *Parker*, Ch. J. when delivering the opinion of the court, "it was reasonably thought, that it was the credit of those who were the members, when the debt was incurred, that the creditor trusted.   It was, therefore, provided, by the statute of 1817, *c.* 163. that the bodies and estates of those, who were members at the time any debt accrued, as well as of those, who were members when the execution issued, should be liable.   So, that even a *bona fide* transfer of shares will not relieve the member from any debt, which accrued while he was a member of the corporation."   Thus, by the respectable legislature and learned judiciary of a sister state, justice and public convenience have been supposed to demand a treble security for creditors, in the case of manufacturing corporations;  that is, against the corporation;—the members of it, at the origin of a debt;  and the members existing at the enforcement of a claim.

Indeed, the defendants' claim seems to comprehend a principle until now unheard of.   It demands a construction free from all possible disadvantage ;  insomuch that the principles of the common law, founded, as they are, in private justice and public convenience, are too oppressive to be borne.

With the supposed inconveniences of the plaintiffs' construction, let the consequences resulting from that of the defendants be contrasted. A proviso, which, when construed with reference to its subject matter, is not of doubtful construction, is to be controuled, by effects and consequences; and many of them, if not imaginary, at least infrequent, remote, or of little inconvenience. The force of law, and of voluntary contract, for such was the acceptance of the charter, must be eluded ; the equitable demand of the creditors, frustrated ; their security, if not wholly annulled, at least greatly impaired, by the denial of a remedy, adequate to their just claims, and the substitution of another, which, it is fairly to be presumed, will be of little avail ; and the proviso, if not annulled, rather alluring the community to an unreasonable confidence in a manufacturing corporation, than furnishing any important benefit.

In conclusion, I have no hesitation in expressing it, as my clear opinion, that on the facts disclosed in this case, the plaintiffs are entitled to judgment.

BRAINARD, J. was of the same opinion.

CHAPMAN, J. This case depends on the construction, which may be given to the words of the proviso, contained in the act of incorporation, which are as follows :—" Provided also, and be it further enacted, that the persons and property of the *members* of said corporation, shall, at *all times*, be liable for all *debts due* by said corporation."

The object, which the legislature had in view, in forming the incorporation in question, were evidently two-fold :—1. To give such powers to the corporation, as would enable the members to manage their concerns, and carry on their business, with more facility, and more effectually, than could be done, by an association of individuals, unaided by incorporated powers ; and 2. to give a security to such as should become creditors, which they would not have against a mere corporation, liable in its incorporate capacity only.

Keeping these two objects steadily in view, we shall be better able to ascertain what *members* are intended to be rendered liable, at *all times*, for *all debts*, due by said corporation, than by a resort to what is esteemed a *liberal* or *strict* construction of the words made use of. If one construction would go to defeat, or render worse than useless, all the powers evidently intended to be conferred upon them, for their benefit ; and also

*Middlesex*, July, 1823.

Mid'n. Bank, *v.* Magill.

to put their creditors in a worse situation, than they would be, by a different one ; that one which would be the most beneficial to both, ought to be adopted, provided such construction stands equally well with the words of the proviso.

On the part of the plaintiffs, it is contended, that those members, who were such, at the *time* of the accruing of any debt against the company, whether payable on demand, or at a future time, are jointly liable, without reference to the solvency or insolvency of the corporation ; and that this *liability* is not discharged, or at all affected, by ceasing to be members.

On the part of the defendants, it is contended, that those *only* are liable, who were members, when a legal demand, was made or in other words, when a suit was brought against the company.

The proviso, it is admitted, is in general terms, specifying no particular *members,* nor any particular debts, making no distinction between *debts* contracted, before, at the time, or after they might become *members.*

The counsel for the plaintiffs have, however, admitted, that those members *only* were liable, who were such, at the time of the accruing of the debt ; thus narrowing down the enquiry to their liability only ; making an admission, which could, by no possibility, injure them, since their suit was against them only. There are no words in the proviso, rendering necessary such an admission ; nor any words, even by implication, which designate such *members* as liable, rather than any other.

The words are general :—" The *persons and property of the members shall,* at *all times,* be liable," &c.

To have claimed, that the *members* liable, were those who were neither such at the time of *contracting* the debt, nor at the time the suit was brought, seems to have been, in the opinion of the counsel, to have taken a stand, that neither law nor equity would support. On examination, however, I believe it will be found, that those members, who may happen to be such at the time any debt is contracted, are under no *superior equitable* obligations to the debts of the company. Indeed, if such a criterion should be resorted to, in order to ascertain *what members* the legislature intended to throw the burden of paying the debts on to, I should be clearly of opinion, that they were the members, who were actually such at the time payment of them was demanded.

In the first place, it is admitted, that the corporate property is liable to be taken, and applied to the payment of the debts ;— and, in my opinion, until this fund fails, or is put beyond the

reach of process, the members are liable neither in their persons nor private property. But even if, as is claimed, the creditors have their election, either to proceed, in the first instance, against the corporation, or the members of it, the argument is not materially weakened; since it is not claimed, that should the property of the corporation be taken, and applied to the payment of a debt, which accrued before either of the persons were members, who were such at the time the action was brought, a right of action would thereby be given to such corporation to recover against those who were members at the time the debt accrued. It would seem extraordinary, that the legislature should, by this proviso, have rendered those members, and those only, liable, who were such, at the time the debt was contracted, and yet have provided no remedy to enable the corporation to reimburse themselves, when their corporate property is taken for the payment of such debts.

But further;—suppose we should examine, a little more particularly, this supposed *equity ;* since it is claimed, that the proviso is to receive its construction from it. At the proper season, materials are purchased, on credit, sufficient to enable the corporation to carry on their concerns for a longer or shorter period ; suppose a year. *A.*, a member, immediately after, transfers his interest to *B.*, who is a member at the time a suit is brought to recover the price of such materials. If these are worked up, *B.* is entitled to his share of the profit of them ; and if not, he, as a corporator, has an interest in them. *A.* has no more interest in it, than any other stranger. Should a profit be made, *B.* shares in it. Should the manufactures derived from these materials be sold on credit, *B.* has an interest in it ; or should they be sold for cash, as a corporator, he is entitled to his proportion. And yet *A.*, it is claimed, is bound to pay the debt, though *B.* is much the most responsible man ; for it will be perceived, that the argument does not proceed upon the ground, that either the company or its members are insolvent, or at all unable to pay such debt. Such a construction would, in a case not unlikely to happen, defeat the creditor of his debt. The members, who are such at the bringing of the action, may all be responsible, and even the corporation abundantly solvent ; yet the corporation property may not be within the reach of the process of law, and those who were members, at the time the debt was contracted, be entire bankrupts.

*Middlesex*,
July,
1823.

Mid'n Bank
*v.*
Magill.

To give a rational construction to the proviso, the act of incorporation must be taken into consideration in connection with it.

It is evident, that the legislature intended to create a *permanent* body, whose property should, at *all times*, be liable for the debts contracted by it. For this purpose, such corporation was made liable to be sued, and lest at any time this *body* should fail to pay its debts, the legislature rendered liable that *tangible* body, which, at all times, must be appended to it, *viz.* the *members.*

Now, I repeat; the question is, what members? It is evident, that the act contemplates the members of a fluctuating body; one that may be daily and even hourly changing, though the corporation, as such, is to remain permanent; but, still this *tangible* body, though perpetually shifting, must be equally permanent with the corporation, since there must be stockholders so long as there is stock; and, of course, there must always be individuals, to be called upon, in the case of a failure of the company to pay their debts.

A facility is, also, by the act, given, to effectuate this change of members, by dispensing with the usual solemnities required in other cases. A mere transfer, on the books, will convey an interest in choses in action, personal property and even real estate. This simple mode of conveyance divests a member of his whole interest; causes him to cease to be a member; and deprives him of all right thereafter to act or be heard, in the management of the affairs of the company. And yet, if the plaintiffs' counsel are right, he is to all intents and purposes, in relation to those creditors, who became such while he was a member, a member still, though not as to any right to participate in the profits, but merely to share in the loss.

He becomes bound hand and foot, and is left wholly at the mercy of the corporation, and its creditors. In vain he calls upon the creditors to secure their debts, while corporate property remains in abundance; and equally vain is it for him to appeal to the justice of the members of the corporation. It is possible, that the legislature may have intended to produce such a state of things; but it never ought to be believed, until they have expressed such an intention in the most *unequivocal* terms.

In giving a construction to a charter, containing a proviso, expressed in such *general terms*, and where the intention of the legislature, is to be sought for, rather from the general object they had in view, than from the language they have used, an

argument *ab inconvenienti* is not without its weight, though not admissible, where the intention is clear.

*Middlesex*,
July,
1823.

Mid'n. Bank,
*v.*
Magill.

It certainly could not have been the intention of the legislature, by this proviso, so to shackle and embarrass the corporation, as to render their charter worse than useless ; and equally certain is it, that they intended some advantages to the creditors, which they would not have had, without the proviso.

I think a very slight examination will evince, that if the construction contended for, by the plaintiffs' counsel, should be adopted, the charter, which was intended to give the members some advantages over a private association, would be " their bane," without " an antidote." An establishment of this sort does its business, in part at least, on credit ; and as, by the charter, the *members*, as well as the company, were made liable to be sued for the debts of the company, this was in the contemplation of the legislature, when the act was passed.

Was it the intention of the legislature, that a man should be " in jeopardy all his life time," if he should purchase a single share, in the stock of this company ? It is not unreasonable, that he should be liable while a member of the company ; for then he has a controul, in proportion to his interest, over their funds. He can point out to creditors corporate property, if any exists ; or if he is compelled to pay the debts of the company, the law furnishes him a remedy either against the corporation, or his co-members. Not so with the member, who has sold out. His power, as well as his relation with the corporation, has ceased ; and nothing remains for him, but to pay the debts contracted wholly for the benefit of others.

When a person becomes a member of a private association, he has a right to abandon it, when he chuses ; and what is of the highest importance, he has a right to apply the funds, to the payment of its debts ; and if he is compelled to pay them out of his own, he can call upon his copartners to contribute.

As the plaintiffs' counsel have throughout relied on the analogy, supposed to exist between the corporation in question and a voluntary association ; and as it is the basis of almost all their reasoning ; they have a right to require, that their arguments, derived from this source, should be well considered, and if found incorrect, fairly refuted. It shall, therefore, be my business to shew, that no such analogy exists, as will at all warrant the conclusions they have drawn.

1. The one is created by act of law ; the other, by act of the parties.

2. The rules, by which the one is governed; the amount of their capital; the mode of doing business; the kind and extent of it; the mode of transfer; in short, all their proceedings, are regulated by the charter, and by that, every thing is put beyond the controul of the members. The duration of its existence, is without limitation. The members may, indeed, change; but the *identical body* remains, with the same powers, subject to the same rules, and incapable of the slightest alteration, without the aid of that power, which gave it existence. The members may vote in the appointment of their agents; and here, as such, their agency ends.

I have already observed, that a *voluntary* association depends on the act of the parties. So do all their proceedings in relation to the kind of business, and mode of doing it. They may daily change and alter these, according to their free will and pleasure; and when they chuse, may put an end to their existence as a company. Each of the copartners may dispose of the whole of the partnership property; may bind all, by a contract, in every thing relating to their business: and may put an end to the copartnership, even against the will of the copartners. The death of one, or the going out of one, and the coming in of another, will have the same effect. Whoever can discern, in this view of the case, such an analogy, as will warrant a decision, founded on it, must see with other than legal eyes.

But it is said, if one partner sells out to a stranger, who is admitted as a member of the firm, that notwithstanding such sale, he is liable to all the debts then due and owing from the copartnership. This is true; and this being admitted, it is confidently asked, why should not a corporator, who has transferred his interest, be in a like situation? I think that several decisive reasons may be given.

The copartnership, by the very act, is dissolved. But in the very case, the corporation remains entire; and the corporate property, thus transferred, is liable to be taken on any execution, in favour of the creditors of the corporation.

Is it so, with respect to the share of the *copartner*, who sells out, to one who becomes afterwards a copartner? Certainly not. The copartner thus selling out, remains liable, in his person and property; but the copartner who comes in, is liable neither in his person nor property. The funds of the copartnership, so far as they belonged to the partner selling out, (if done *bona fide*) become, at once, exonerated from all liability

to be taken to satisfy the debts of the firm. The *new partner* retains, beyond all question, all the property he acquired, by the *purchase*, and the vendor remains liable to all the debts of the copartnership. Really, could any thing be more unlike, than the corporation in question and a voluntary association? In scarce a single point, is there the least resemblance.

It may be *amusing*, and perhaps *useful*, to enquire into the consequences, which would necessarily result from adopting the construction contended for by the plaintiffs' counsel ; I mean, in respect to the creditors themselves.

An establishment of this kind, must, by their agents, be continually engaged in purchasing the *raw materials*, employing workmen to manufacture them into fabrics, which must be sold, to meet the expenditures of the corporation. In the mean time, the *stock* is in market. It is daily, and even hourly, bought and sold. What purchaser of a single share could imagine, that he should be liable to pay all the debts contracted by the corporation, while he might remain a member ?

But in respect to the *creditors* themselves ; some persons may be employed by the month ; some, by the day ; materials are to be delivered by parts ; payment to be made, at different periods. Now, in case of the insolvency of the corporation, to whom are these various creditors to look for payment ? To those who were members at the time their debt accrued, say the plaintiffs. Who these are, may be partially ascertained, from inspecting the books of the company ; but to arrive at *certainty* on the subject, the *time* of day must be determined. Should the day-labourer, include one in his suit, who had transferred his interest, before his day's work was completed, it would be fatal to him, or should he omit one, his suit must abate. Add to this, that instead of recovering his demand, by a single suit, the suits must be as numerous as the transfers, which have been made, during the time of his employment. In short, there is no end to the difficulties, and embarrasments, which must attend any attempt to chain so fluctuating a body, as the members must be, to one so fixed and permanent as a corporation.

One objection still remains to be encountered, *viz.* That if a member, by transferring his interest, exonerates himself from all personal liability, then the members may, at any time, (in case the corporation becomes insolvent,) defeat the claims of creditors, by transferring their interests to bankrupts.

Were this true, the argument derived from it, would be indeed formidable. But no principle is better settled, than that a conveyance made, with an intention to defeat a creditor, is void. If then, the members dispose of their interest, with such intentions, the creditors may treat them as members; and of course, they will remain liable, to the same extent, that they would have been, had they made no such conveyance. Vide *Marcy* v. *Clark*, 17 *Mass. Rep.* 330.

It was not to be expected, that any cases would have been cited from the *English books*. None at all bearing upon the question can be found. No such *being* as the one under consideration, ever existed there. This is a creature of our own manufacture; and must be governed by rules prescribed for it.

We have, however, in this state, certain corporations, which, in my judgment, bear some analogy to this; I mean towns, societies, &c. The creditors of a town may, on execution, take the property of any inhabitant, (while such) whether the debt accrued, during the time he might have been an inhabitant, or not. But, the moment he ceases, (by removal,) to be an inhabitant, his *liability* ceases. In my view of the subject, the legislature intended to form a corporation, in the present case, at least analogous to these. And what is the objection to this construction? The members may sell out to bankrupts; but if this is done fraudulently, as I have already observed, the stockholders are still liable. The great object which the legislature had in view, was, to have, at all times, a real body attached to the ideal one, which should be answerable for its debts. That this body should be a changeable one, was contemplated by the act, as express provision is made for it; nor is it to be believed, that it was intended, that no member could *safely* sell out, unless he should take a bond from the vendee to indemnify him, from all the debts due and owing from the company.

The creditor does not give credit to the stockholders, as such. They may be hourly changing. They, in no sense of the word, are debtors. Like the inhabitants of towns, they may be compelled to pay, while they remain members, not as debtors, but as guarantees. The corporation is the real *debtor;* and the members, while such, its surety.

A single case only, bearing directly on the point in question, has been cited, which, if considered as an authority, is decisive of this case. *Bond* v. *Appleton*, 8 *Mass. Rep.* 472. In that

case, " *the original stockholders, their successors, and assignees,* were made jointly and severally liable, &c."; but the court added, by construction, "*being such when a suit is brought;*" so entirely convinced, were they, that the legislature, though their words seem hardly open to construction, never could intend to create such a *legal absurdity,* as such a corporation would be.

I am therefore of opinion, that judgment be entered up for the defendants.

PETERS and BRISTOL, Js. were of the same opinion.

*Judgment to be rendered for the defendants.*