### SOUTHMAYD and HUBBARD *against* RUSS and others.

*June 21.*

In the  act incorporating  a manufacturing  company, it was  provided, that *the persons and property of the members of the corporation, should, at all times, be liable for all debts due by said corporation.* A creditor brought his action of  debt on book against the corporation, obtained judgment, and took out execution, on which there was a return of *nulla bona.*  He then brought a *scire facias* against the individual  members of  the corporation, stating the previous proceedings.  It was held, that such *scire facias* would not lie ; the members being original debtors, and liable in the same manner as though there had been no incorporation.

THIS was a *scire facias* against the individual members of the *Middletown Manufacturing Company*, on a judgment in favor of the plaintiffs, against that company, in its corporate capacity.    The plaintiffs stated, that they brought their action on book to the *Middletown* city court, held on the second *Tuesday* of *August*, 1817, against the *Middletown Manufacturing Company*, located and transacting business within said city, demanding two hundred dollars, damages ; that the writ was duly served and  returned, and was continued to the term of said court, held on the second *Tuesday* of *September*, 1817, when the plaintiffs recovered judgment against said company for the sum of 200 dollars, damages, and 4 dollars, 58 cents, costs ; that the plaintiffs thereupon took out execution, and put it into the hands of *Enoch Parsons*, Esq. sheriff of the

county of *Middlesex*, to serve and return according to law, who made his return thereon as follows, *viz.* " *Middlesex* county, *ss. Middletown, October* 29th, 1817. I have made diligent search and enquiry, throughout my precincts, for the goods or estate of the *Middletown Manufacturing Company*, wherewith to satisfy the sums due on this execution, but I could find none ; and on the 17th of *October*, 1817, I demanded of *Henry Wolcott* of said *Middletown*, clerk of said company, moneys, goods or estate to satisfy the sum due hereon, but he paid me nothing, and showed me no estate ; and on the 18th instant, I made a like demand of *Arthur W. Magill* of said *Middletown*, the agent of said company ; and on the 20th instant, I made a like demand of *Alexander Wolcott* of said *Middletown* ; but the said *Magill* and said *Alexander Wolcott* paid me nothing, and shewed me no estate, and I could find none belonging to said company within my precincts, though I have searched and enquired diligently therefor. Teste, *Enoch Parsons*, Sheriff." The plaintiffs then averred, that the defendants, *viz. John Russ* of *Hartford*, *George Blake* of *Boston*, *Lemuel Whitman* of *Farmington*, *Thomas Barlow*, formerly of *Washington* city, now in *Paris, Ithamar Atkins, Henry Wolcott, Elizabeth Magill, Martha Williams*, wife of *Samuel Williams*, and *Arthur W. Magill*, of *Middletown*, and *Sarah Waldo* and *Esther Magill*, late of *Middletown*, now deceased, were, each of them, at the time that the *Middletown Manufacturing Company* became indebted to the plaintiffs, at the time of the impetration and of the service of the plaintiffs' writ against said company, and at the time of rendering the judgment aforesaid, members and stockholders of said company ; which company then was, and now is, a corporation, created, and existing, by a certain statute law of this state, entitled, " An Act incorporating the *Middletown Manufacturing Company*," and by which statute law, they, as members, are legally bound to pay the judgment and execution, so recovered, by the plaintiffs, against the *Middletown Manufacturing Company ;* said judgment and execution not having been paid, or satisfied.

To this *scire facias* there was a demurrer ; and the court reserved the question arising thereon for the consideration of all the Judges.

*N. Smith* and *Sherman*, in support of the demurrer, contended, 1. That this *scire facias* was not sustainable, for want

*New-Haven,*
*June,*
*1819.*

*Southmayd*
*v.*
*Russ.*

of an averment, that the debt could not be satisfied from the funds of the company. The officer's *return* on the execution, does not supply the place of such an averment: it is, at most, *evidence* only of a deficiency of assets.

2. That the want of an averment of *indebtedness* to the plaintiffs, was equally fatal. The plaintiffs state, that they brought an action of book debt against the company, and recovered judgment; but they do not aver, that there was any debt due to them. There, again, they state the evidence merely, without an averment to which it can apply.

3. That, admitting the statement of the judgment tobe equivalent to an averment of indebtedness, it would shew an indebtedness against the company only, and not against the individuals who are now sued. To that judgment these individuals were neither parties nor privies. It is, therefore, not evidence of debt so as to bind them. *Sturges* v. *Beach,* 1 *Conn. Rep.* 507. 509. The allegation that the defendants, as members of the company, are legally bound to pay the judgment, is a mere inference of law.

4. That, admitting the individual liability of the defendants, a *scire facias* is not the proper remedy ; but the plaintiffs must sue upon their original cause of action. By the act of incorporation, (*a*) the members are liable for the debts of the corporation, in the same manner, that they would have been liable, as members of an unincorporated company.

*Staples* and *Hotchkiss,* contra, admitted, and indeed claimed, that the defendants were liable to the same *extent* as though they had never been incorporated; but they contended, that a *scire facias* was, notwithstanding, the proper remedy. The legislature had constituted a corporation, with the power of contracting debts, and of suing and being sued. That corporation had a certain fund, on the credit of which they contracted debts, and from which such debts were to be discharged. It is, therefore, just and equitable, as well as in accordance with the manifest intention of the legislature, that that corporation should be called upon, and that fund exhausted, before the persons and property of the members should be resorted to. But after an action at law had been brought, and judgment had been recovered, against the corporation, and it had

(*a*) *October Session,* 1810. *c.* 1. *s.* 12.

been ascertained, by legal process, that no fund of the corporation remained, to satisfy the judgment; the only proper course was, to call upon the members to shew cause why they should not satisfy the judgment from their private funds. This it is the appropriate office of a *scire facias* to do. The use and object of the process, is, to give the persons individually liable, a *day in court*. The general rule is, that where a new person is to be charged by the execution of a judgment, there must be a *scire facias* to make him a party to the judgment. 2 *Tidd's Prac.* 1021. Within the meaning of this rule, the defendants are " new" persons, being liable in a distinct capacity, with respect to the body politic against which the judgment now to be executed was rendered.

2. They then contended, that the averment of a judgment recovered by the plaintiffs, before a court of competent jurisdiction, in an action of book debt, against the company, which judgment had not been paid or satisfied, was a sufficient averment of a debt due from the company to the plaintiffs.

3. That the averment of the doings of the sheriff upon the execution, was equivalent to an averment of the want of visible funds belonging to the company; which was all that was necessary. At any rate, it showed, that the requisite steps preparatory to a *scire facias* had been taken.

HOSMER, Ch. J. This is an action of *scire facias* to enforce the payment of a judgment against the *Middletown Manufacturing Company*, from the members who compose it.

By an act of the general assembly, the company were created a corporation. Aware, however, of the hazard to which creditors might be subjected, if they could have recourse to the corporation only, for the satisfaction of their debts, the legislature subjoined a provision to their charter, in the following words : " That the persons and property of the members of said corporation, shall, at all times, be liable for all debts due by said corporation." This novel condition renders· it necessary to enquire after the purpose for which it was introduced. The object in view may be ascertained without much difficulty. The legislature intended to invest the company with corporate powers, and so to limit them that the responsibility of the members for the company debts should not be impaired. In other words, the incorporation was not to have any effect on the subject of individual indebtedness. For the

*New-Haven,*
*June,*
*1819.*

*Southmayd*
*v.*
*Russ.*

company's debts, the members were "at all times" to be liable. Had the provision stopped here, after a declaration of their liability merely, perplexing questions would have arisen. When is this liability to commence? Is it to be original and absolute; or to arise on the non-payment of executions obtained against the corporation? To answer these enquiries, the expression "at all times," was inserted. The entire phrase denotes, with perfect clearness, that so soon as a debt is contracted, it becomes obligatory on the natural persons comprising the corporation, as contradistinguished from the legal or artificial person. If the individual members were not original debtors, they would not, "at all times," be responsible. To sustain the argument that they are liable conditionally, or on the happening of an event posterior to the contract, the recited clause must be expunged.

The original and absolute indebtedness of the members demonstrates the manner of their responsibility. They are answerable precisely as if there had been no incorporation. The debt is no sooner incurred, than their liability commences. This, undoubtedly, was the object of the clause on which I have commented; as the words, without any strained interpretation, evince. The construction is confirmed by the avoidance of many inconveniences and embarrassments, which a different explanation would occasion. It is likewise recommended, by its perfect equity. While the members of the company enjoy all the privileges of a corporation, their creditors possess the rights, and are entitled to the remedies, which are furnished, by established law, against an ordinary copartnership.

Had I entertained any doubts on this subject, they would have been dissipated, by reflecting on the only interpretation, other than the one I have given, of which the act is susceptible. The objections made by the defendants' counsel, to the enforcement of the judgment in question, by *scire facias* against the members of the company, have been so numerous as greatly to confirm the opinion I have expressed.

The present action against the defendants cannot be supported. Of consequence, I would advise the superior court to render judgment in their favour.

CHAPMAN and BRAINARD, Js. were of the same opinion.

PETERS, J. I concur with the Chief Justice in advising the superior court to render judgment for the defendants; but not for the reasons assigned by him. I shall not attempt a construction of the statute alluded to in the pleadings; as it cannot be noticed judicially, without travelling out of the record. It is sufficient for me, to observe, that two fatal defects are manifest in this declaration. First, it contains no averment that the *Middletown Manufacturing Company* are insolvent, but merely a recital of the sheriff's return of *nulla bona*. Secondly, it does not set forth the act of incorporation, but merely refers to it as a public statute.

*New-Haven,*
June,
1819.

*Southmayd*
*v.*
*Russ.*

It is an established rule in pleading, that the plaintiff should declare on the facts constituting the gist of his action according to their legal operation, and not on the evidence of those facts. *Brunson* v. *Brunson*, 2 *Root*, 73. *Cook* v. *Simms*, 2 *Call*, 39. *Bacon* v. *Page*, 1 *Conn. Rep.* 404.

It is equally well settled, that a public statute may be pleaded without reciting it; for the judges *ex officio* take notice of it; otherwise of a private statute, of which they take no notice, unless pleaded; and when pleaded, it must be set forth *specially*. *Holland's* case, 4 *Rep.* 75. *The King* v. *Wilde*, 1 *Lev.* 296.

The reason of these rules is too obvious to need illustration; and they have been too long established to require support from arguments. We are bound to know, that there is no public statute of the title recited in the declaration; but we know nothing of any other statute, because it is not shewn to us. The *title* is no part of a statute. *Chance* v. *Adams*, 1 *Ld. Raym.* 77.

BRISTOL, J. I concur in the result, on the ground that the defendants were neither parties nor privies to the proceedings against the *Middletown Manufacturing Company*; and, of course, were not *concluded*, by the judgment against the corporation. But I give no opinion on the question whether the defendants are to be regarded as a mercantile copartnership, subject to all the liabilities of partners for the debts of the company; considering it unnecessary and improper to decide a question involving so many difficulties, until the point shall be brought directly before the court.

Judgment to be rendered for the defendants.