GEORGE AND CHARLES DAUCHY *v.* MILTON BROWN, ELISHA ALLEN, STURGES PENFIELD, AND MARSON EDGERTON.

[DECIDED JULY SPECIAL TERM, 1852.]

*Pawlet Manufacturing Co. Liability of Stockholders.*

The act establishing the Pawlet Manufacturing Company, was passed November 7, 1814. Section 5 of the said act contains the following provision: "That the "persons and property of said corporation shall be holden to pay their debts, "and when any execution shall issue against said corporation, the same may be "levied on the persons or property of any individual thereof." It was *held*, that this provision imposed upon the corporation a primary liability, and upon the stockholders a liability subordinate to and depending upon the liability of the corporation, and is a liability carved out and existing by the statute, and can have no existence independent of its provisions.

It was also *held*, that when a statute thus creates a liability and provides a remedy, the creditor is as much bound to resort to the act for the remedy given, as for the liability imposed for his security; and that in no case under such circumstances can the remedy be considered cumulative.

And it was further *held*, that when the statute provides that an execution issued against the corporation may be levied on any individual thereof; it implies a positive requirement, that such proceedings shall be had against the corporation upon which execution can issue, as a preliminary step, before proceedings can be had against the stockholders, for the indebtedness of the corporation must exist before the liability of the stockholders can arise; and that indebtedness can only be tried in a suit against the corporation in such a way, that those upon whom the execution may be levied shall be thereby concluded.

If a stockholder of such a corporation fraudulently dispose of his stock to avoid his liability, such transfer as against creditors will be absolutely void.

Such a corporation may connect the business of a store with the ordinary business of the corporation, and if the business is transacted in the name of the corporation, and for corporate benefit, and a creditor transacts business with them in that capacity and trusts the corporation for goods, he must enforce his claim against the corporation before the stockholders can be made liable, and cannot sustain an action against the stockholders individually.

DEBT. The declaration contains several counts; the four first, state an indebtedness to the plaintiffs by the Pawlet Manufacturing Company, and that by a provision in their charter the defendants are liable as stockholders, in their private and individual capacity. The remaining counts are on account stated, for goods and merchandise sold and delivered, for money had and received, paid, laid out and expended, under which plaintiffs seek to recover for same matters upon a common law liability, independent of any provision in the charter of the corporation.

This action came on to be tried, April term of the county court, 1851. Plea, the general issue and trial by jury,—BENNETT, J., presiding.

On trial, it was admitted that the goods specified in the plaintiffs' bill of particulars, produced on the trial, were purchased of the plaintiffs in the city of Troy, in the State of New York, at the dates specified therein, which, was between the 24th day of November, 1849, and the 10th day of May, 1850, by the agent of the Pawlet Manufacturing Company, upon the credit of said company, and were brought to the store of said company in Pawlet, Vermont, and appropriated to the use of said company. It was also admitted, that the defendants were the sole stockholders in said company at the time said goods were purchased and used by said company, the amount due upon said bills being conceded for the purposes of the present trial.

The plaintiffs introduced the act incorporating the Pawlet Manufacturing Company, approved November 7, 1814, also the book of records of said company. The plaintiffs then offered to prove that the said company had for several years kept a store for the sale of such goods as are ordinarily kept and sold in a country store, in connection with their business of manufacturing cotton goods; and that the agents of said company had been accustomed to make purchases in market of such goods, and to dispose of them in said store, in part payment of the hands employed in said company's factory, and in part in the manner of an ordinary retail trade, with the knowledge of said defendants, and without objection on their part, and that the goods in question were disposed of in like manner.

The plaintiffs further offered to prove, that at the time of the respective dates of the transfer of the defendants Brown, Allen

and Penfield of their stock, as shown by the book of records, to Edgerton, another defendant, that said Edgerton was insolvent, and that such transfers were made and received with intent to avoid liability on the part of said Brown, Allen and Penfield, for the plaintiffs' debt.

The defendants had not offered in evidence said transfers, and without objecting to the evidence, stated that they were prepared with testimony to show the contrary.

The court "*pro forma*" excluded the testimony offered as being immaterial, and decided that the action could not be maintained against these defendants; and directed the jury to return a verdict for the defendants. To which several decisions of the court, the plaintiffs excepted.

*D. Roberts, Jr.*, and *E. Edgerton* for plaintiffs.

1. Act of incorporation passed November 7, 1814. Pamphlet, p. 61, Sec. 5.

*First clause.* "The persons and property of said corporation "shall be holden to pay their debts." This, though inartificially expressed, has this meaning, that the stockholders of said corporation shall be liable in their persons and property for the debts of the corporation. As in several acts passed at the same session.

The expression, "persons and property shall be holden," &c., means that stockholders shall be holden in person and property. *Southmayd et al.* v. *Russ et al.*, 3 Conn. 52. Taking this clause by itself the liability of the stockholders for corporate debts is announced.

The general law without more gives the remedy. *Southmayd et al.* v. *Russ et al. supra. Deming* v. *Bule*, 10 Conn. 409. *Middletown Bank* v. *Magill*, 5 Conn. 28. *Allen* v. *Sewell*, 2 Wend. 327. *Ex parte* Van Ripon 20 Wend. 617. *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 473. Ang. & Ames on Corp. 565.

The stockholders are not sureties or guarantors of the corporation, but primarily liable as principals and original debtors, as partners; with this provision, this is a qualified corporation, the liability of the stockholders as partners, under the corporate name, being not created by the act, but preserved as it existed without the act. 3 Conn. 52 *supra;* 2 Wend. 327 *supra. Moss* v. *Oakley*, 2 Hill 265; *Judson* v. *R. Galena Co.*, 9 Paige Ch. 598;

*Baily et al.* v. ——, 3 Hill 188; *Haiger* v. *McCollough,* 2 Denio 123; *Corning* v. *McCollough,* 1 Compstock 47; 2 Kent Com. 272. A quasi corporation, Aug. & Ames 546.

Therefore, as the liability was not created by the statute, we are not confined to the statute for our remedy. 3 Conn. 52 *supra;* 20 Wend. 617. *supra;* 1 Compstock 47 *supra. Bank of Australasia* v. *Harding,* 19 Law. J. Rep. 345. *Bank of Australasia* v. *Nias,* 4 Eng. Law & Eq. Rep. 252.

This view is confirmed by the facts of the case.

There was an original partnership under the name of "Ozias Clark & Co." Under that name the members and subscribers apply for a charter, and the same members of the partnership are thereby made members of the corporation. Under the name of "Ozias Clark & Co." they meet and accept the charter. They make by-laws,—the 5th by-law declaring that the members shall share in *profit* and *loss,* and is the same old by-law of "Ozias Clark & Co." It is the old partnership with a new name.

The plaintiffs seek to charge the defendants as partners outside of the act of incorporation. By the act, the stockholders are to "have and enjoy all the privileges incident to corporations, for "the purposes of manufacturing all or any of the articles made "from cotton or wool," but for no other purpose.

This company has engrafted a new business upon their manufacturing business, to wit, the business of a retail country store. They are partners herein, and as such liable to pay for these goods, which were purchased and went to this extra corporate use.

The case cannot be likened to that of towns, counties, and school districts, &c.; these are called *quasi* corporations, and no action lies against them, unless given by statute. *Russell* v. *Men of Devon,* 2 T. R. 667.

But if given by statute, each inhabitant is liable to satisfy the judgment. 2 Kent Com. 274; Ang. & Ames, 566.

The statute directing the mode of proceeding with executions against corporations, applies to public and political corporations who may vote and levy a tax. *Bigelow* v. *Cong. Soc.,* 11 Vt. 287.

*H. Allen* and *C. L. Williams* for defendants.

1. The section of the act of incorporation upon which plaintiffs rely to sustain their action, is in derogation of the common law

G. & C. Dauchy *v.* Brown et al.

and of private rights, and therefore should be construed strictly. *Sprague* v. *Birdsall,* 2 Cowen 419. *Coolidge* v. *Williams,* 4 Mass. 140. *Strong et al.* v. *Speir,* 4 Hill 76. *Sharp* v. *Johnson,* 4 Hill 92. *Stone* v. *Wiggins,* 5 Met. 316. U. S. Dig. Vol. 3 p. 486, Sec. 117 and 115; U. S. Dig. 1848, p. 336, Sec. 12.

2. If an action at law might be sustained upon the first clause of Sec. 5 of the act, where no other remedy is prescribed, still such action cannot be sustained in this case, but the remedy prescribed in the last clause of that section must be adopted; for it is a familiar principle of law, that where the Legislature create a liability, and prescribe a remedy for enforcing that liability, no other remedy can be adopted. *Strong et al.* v. *Speir,* 4 Hill 76; *Calking* v. *Baldwin,* 4 Wend. 667; *Andover & Medford Turnpike Co.* v. *Gould,* 6 Mass. 40; *Franklin Glass Co.* v. *White,* 14 Mass. 286; *Sudbury M.* v. *Middlesex Canal,* 23 Pick. 36; *Dodge* v. *County Com'rs of Essex,* 3 Met. 380; Comyn's Dig. Vol. 1 p. 447; *Gedney* v. *The Inhab. of Tewksbury,* 3 Mass. 307; *Smith* v. *Drew,* 5 Mass. 514; *Stafford* v. *Ingersol,* 3 Hill 38; *Alney* v. *Hains,* 5 Johns. 175; *Andrews* v. *Callender,* 13 Pick.; *Kelton* v. *Phillips,* 3 Met. 61; *Child* v. *Coffin,* 17 Mass. 64; *Middlebury* v. *Hubbardton,* 1 D. Ch. 205; *Aldrich* v. *Londonderry,* 5 Vt. 441; *Aldis* v. *Hall,* 1 D. Ch. 309; *Rice* v. *Talmadge,* 20 Vt. 378.

The decisions in New York, cited, relate to acts of incorporation entirely different from the one in question, and therefore cannot be deemed decisions in point.

The proceedings of the partnership which existed previous to the organization of the corporation, can have no influence in the construction that is to be given to the 5th section of the act of incorporation. *Barker* v. *Esty et al.,* 19 Vt. 131.

It is a rule of construction, that where the meaning of a statute is doubtful, considerations arising from the injustice or inconvenience of a particular construction will have effect. *Rogers* v. *Goodwin,* 2 Mass. 475; *Putnam* v. *Longley,* 11 Pick. 487; *Ayres* v. *Knox,* 7 Mass. 306; *Gore* v. *Brazier,* 3 Mass. 523; *Langdon* v. *Potter,* 3 Mass. 215; *Harris* v. *Dorchester,* 23 Pick. 112; *Hunt* v. *Lee et al.,* 10 Vt. 297.

3. By the last clause of the fifth section of the act of incorporation, those only are made liable who are members at the time of

the levy of the execution. *Marcy* v. *Clark,* 17 Mass. 330. *Leland* v. *Marsh,* 16 Mass. 389. *Kelton* v. *Phillips,* 3 Met. 61.

4. But if an action can be maintained upon the first clause of the *fifth section,* it can only be maintained against those who are members of the corporation at the time of the commencement of the suit. *Middletown Bank* v. *Magill,* 5 Conn. 28.

The opinion of the court was delivered by

ISHAM, J. The declaration in this case, which is in debt, contains several counts, the four first of which state an indebtedness to the plaintiff by the Pawlet Manufacturing Company, and that by a provision in their charter the defendants are liable as stockholders for the payment of that indebtedness in their private and individual capacity. The remaining counts are on an account stated, for goods and merchandise sold and delivered, for money had and received, paid, laid out and expended, and under which the plaintiff seeks to recover the same matters upon a common law liability, independent of any provision in the charter of that corporation.

The claim of the plaintiffs accrued between the 24th of November, 1849, and the 10th of May, 1850. The articles of merchandise constituting that claim were purchased of the plaintiffs by the agent of the Pawlet Manufacturing Company upon the responsibility and credit of the company, and were appropriated for their use and benefit. We learn from the case that the defendants were the sole stockholders in the corporation at the time the goods were purchased and used. The act of incorporation was granted Nov. 7, 1814, in which the persons therein named were duly incorporated by the name of the Pawlet Manufacturing Company, with all the powers and privileges incident to corporations. The manner of organization is therein directed, as well as the disposition and transfer of its corporate stock. The 5th section contains the following provision, "That the persons and "property of the said corporation shall be holden to pay their "debts, and when any execution shall issue against said corpora-"tion, the same may be levied on the persons or property of any "individual thereof."

The last clause of this act gives a construction to the former, so that that clause should read, that the persons and property *of*

*the members of said corporation* shall be holden, &c.   The object of the Legislature in that provision is very manifest.   They intended to give the creditors of that corporation a right to enforce payment of their claims, not only against the corporate effects, but also against the persons and property of its several stockholders. And there should be such a construction of this provision as will carry into effect this intention, and enforce those liabilities created by this enactment.   But whether that liability against the stockholders is to be enforced by a special action of this character, or in some other mode, is the important question arising in the case.

It is a common principle, and of frequent application, that where a statute creates a new right or imposes a liability that did not previously exist, and specifies no mode by which that right is to be protected, or liability enforced, that the common law will give that remedy, and ordinarily by an action on the case, or of debt on the statute.

We have illustrations of statutes of this character in acts of incorporations granted during the same session of the Legislature. The act incorporating the Addison Manufacturing Company, page 15, provides, " that the persons and property of the members of said corporation shall be holden for debts contracted by said corporation."   And yet no mode is pointed out by which that liability is to be enforced.   The charter of the Brattleboro Gun Factory Company, p. 75, provides, " that the private property of the stockholders shall be liable for the just debts of the corporation." In this charter the persons of the members are not responsible, though their property is, but no mode is pointed out to enforce that liability.   The same provision is contained in the Saxton Village Cotton and Woollen Company, p. 81.   In all these cases, there is no remedy only as it is found in the principles of the common law.   It is equally well settled that where a new right is created by statute, or liability imposed that did not exist at common law, and the statute prescribes the manner of enforcing that right or liability, the remedy given by the statute must be adopted, and the liability can be enforced in no other way.   Statutes also frequently afford cumulative remedies, and do in all cases where a right existed, or a liability was imposed at common law, and a statute intervenes giving a new method of enforcing that right or liability without the use of negative words.   In such cases the

party at his discretion may resort to his remedy at common law, or to the remedy given by statute. 3 Hill Rep. 39, *Stafford* v. *Ingersoll.* 5 John. Rep. 175, *Almy* v. *Harris.* 6 Mass. Rep. 44. 14 Mass. Rep. 289.

These general principles have been urged by counsel in the argument of the case. Their correctness has not been disputed, but the difficulty in this investigation exists in a proper application of these general rules to the case under consideration. The first clause of the 5th section of this charter declares the liability of the stockholders to pay the company debts. Without this provision in the charter, evidently no such liability would exist. Angel & Ames in their treatise on Corpts., p. 470, observe, "that "one of the properties of a private aggregate corporation is the "irresponsibility of its members for company debts, and that they "are not liable beyond the amount invested in their subscription "for stock." And TILGHMAN, Ch. J., in *Myers* v. *Irwin*, 2 Sergt. & Rawl. 371, says, "The personal responsibility of the stockholders is inconsistent with the nature of a body corporate." The object in granting such charters is to shield its members from such personal responsibility, and it was formerly deemed a matter of public policy so to grant them, as individuals were induced to invest a portion of their property for the purposes of trade and public improvement, who otherwise would abstain from so doing, were not their liability thus limited. Such is the legal operation of acts of incorporation where no provision of that character is introduced.

But where such provision, declaring the personal liability of the stockholders, is introduced, with the manner of enforcing it, its legal effect, and the remedies thereon, is a matter of much difficulty and doubt.

It has been urged in this case, that the provision creates a qualified corporation, or a corporate body for specific purposes only, having the right to sue and be sued, and otherwise to manage the affairs of the company. But in their relation to creditors, that they are held liable as members of an ordinary partnership, or as members of an unincorporated company, the same as if no act of incorporation had been granted. Or in other words, that in that particular relation and the duties arising therefrom, they have never been incorporated.

On the other hand it is insisted, that the charter, with such a provision, creates a corporate body, with all the rights and incidents of a corporation, and that for any matter arising, during the existence of the corporation, upon its credit and for its sole use and benefit, the individual members are not liable therefor as partners, or as members of a voluntary association; but that the provision of the act creates a new right for the creditor, and imposes a liability on the members, that does not otherwise exist, and which has its origin and existence only in that provision of the act.

It is upon the effect, produced by incorporating that provision in the charter, that the cases to which we have been referred have their more direct application, and a determination of this question, virtually makes a final disposition of the case.

The importance of this question arises from its bearing upon the last clause of the 5th section of the act incorporating the Pawlet Manufacturing Company. For the section which declares the liability of the stockholders, does in the last clause point out a way in which that liability can be enforced. And if the provision declaring the liability of the stockholders, creates simply a qualified corporate body, leaving the liability of the members as it would be at common law, without the act of incorporation, then the remedy given by this statute is merely cumulative, and this action, as at common law, can be sustained against the stockholders. But if this liability does not exist at common law, or independent of that provision of the act, and is created solely by the statute, then the remedy given by the statute is not cumulative, and this action cannot be sustained. The remedy of the creditor in such case is only as directed by the act, in obtaining a judgment against the corporation, and levying an execution thereon upon the corporate effects, or the property of the individual stockholders.

From the decisions in the state of New York it is evident that the remedy so given by the act is merely cumulative, and that stockholders under such a provision in their charter are held liable as partners, upon a common law liability. This is the language of Judge JONES in *Corning* v. *McCollough*, 1 Comp. Rep. 47, and his opinion is in accordance with the generally expressed views of their court, as given in the several cases to which we

have been referred. That case was upon a provision in the charter of the Russie Galena Company, which "provided that the "stockholders shall be jointly and severally personally liable for "the payment of all debts and demands contracted by the corpo-"ration, and that any person having any demand against the cor-"poration may sue any stockholder in any court having cogni-"zance thereof." The defendants plead that the cause of action did not accrue within three years and to which there was a demurrer. The court held the action not barred in that period, as the suit was brought upon an individual liability existing independent of the statute. It is unnecessary to examine the various authorities from that State to which we have been referred. It is sufficient to say that the doctrine seems well settled there, that such a provision in a charter creates a qualified corporation simply, that the liability of its members exist at common law, and the remedy given by the statute as cumulative, to which, or that at common law, the creditor at his discretion may resort.

In Connecticut, where this subject has been much discussed, much difference of opinion has been expressed. The case of *Southmayd* v. *Russ*, 3 Conn. Rep. 52, arose upon a provision in the charter of a Manufacturing Company, "That the persons and "property of the members of the corporation *should at all times* "be liable for all debts due by said corporation," the act pointing out no remedy, it of course is to be found in the principles of common law. Ch. J. HOSMER, who gave the opinion of a majority of the court, held the liability of the stockholders to be the same as if no act of incorporation had been granted, and were the same as members of a voluntary association. It is to be observed, however, that his opinion rests upon the phraseology of the act in the use of the words, "liable at all times." These words he considered created a personal liability on the members the moment the debt was contracted. The case therefore can have no definite application to cases where those words are not contained in that provision of the charter. The question, however, was again re-examined in the case of *Middletown Bank* v. *Magill*, 5 Conn. Rep. 28. This case arose upon the same charter, and it was held that an action of assumpsit would not lie against stockholders who were such at the time the debt was contracted, but who had transferred their stock before the commencement of the suit. Ch. J.

HOSMER, who dissented from the opinion of the court, held the action maintainable on the ground that they were liable as partners, as if no act of incorporation had been granted, and that such liability was created the moment the debt was contracted, and relied upon the case of *Southmayd* v. *Russ*, as having decided the question then before them. The majority of the court held otherwise, and in their decision used this emphatic language: "That the creditor did not give credit to the stockholders as such; they in no sense of the word were debtors; they like the inhabitants of towns may be compelled to pay while they remain members, not as debtors, but as guarantors. The corporation is the real debtor, and the members while such, its surety."

On this construction of that provision, two things necessarily follow. In the first place, that the insertion of such a clause in an act of incorporation has some other effect than simply to create a qualified corporate capacity. It creates a corporate body with all the powers and privileges incident to any corporation, empowers them to direct, not only the management of corporate duties, but defines also the relation which exists between them and their creditors, by imposing upon the corporation a primary liability, and upon the stockholders a liability subordinate to, and dependent upon the liability of the corporation. In the second place, it is evident that if such is the character of that liability, it is not one that exists at common law. It is not that of partners, or as members of a voluntary association, for in that event their liability would not have been discharged by a transfer of their stock. But it is a liability carried out and existing by the statute, and which can have no existence independent of its provisions. And when a statute thus creates a liability and provides a remedy the creditor is as much bound to resort to the act for the remedy given, as for the liability imposed for his security. In no sense, under such circumstances, can the remedy be considered cumulative.

In Massachusetts, it has been the policy from an early period to increase the liability of individual stockholders in manufacturing corporations for the debts of the corporation. Their act of 1808 not only created a personal liability on the stockholders, but further provided that when an execution shall issue against a manufacturing corporation, and the same is not paid by a limited

time, "the officer shall serve and levy the same upon the body or "bodies and real and personal estate of any member or members "of such corporation." It will at once be perceived that there is a substantial similarity between the statute of Massachusetts and the 5th section of the act incorporating the Pawlet Manufacturing Company, and that a proper construction of one will aid in the construction of the other.

In the case of *Child* v. *Coffin*, 17 Mass. Rep. 64, it was held that an execution thus issued could only be levied upon the estate of such as were members at the time of the commencement of the suit, and that the decease of a member before suit, discharged his estate from any liability. This decision is entirely incompatible with the idea of their liability as partners, or that an action upon a common law liability can be sustained. For if such liability existed, the death of the party would not discharge his estate. The same principle was also recognized in the cases of *Bond* v. *Appleton*, 8 Mass. Rep. 472, and in *Cutler* v. *Middlesex Factory Co.*, 14 Pick. Rep. 484. *Ripley* v. *Sampson*, 10 Pick. Rep. 372, *Andrews* v. *Callender*, 13 Pick. Rep. 490. In this last case, PUTNAM, J., says that "the liabilities of the individual members "of the corporation are created by the statute, and it is clear "that at the common law the corporation only would be liable." This being the law under the act of 1808, we are informed, 2 Amer. Jurist 95, that the Legislature were not satisfied; which gave rise to the act of 1817, by which the persons and property not only of members of the corporation, but of persons who were members at the time the debt accrued, are made liable to be taken on an alias execution.

It would be difficult to find legislation and judicial construction of that legislation more applicable than this to the case under consideration. For if under the act of 1808 the members were liable as partners or in any way independent of the statute, then the act of 1817 was unnecessary. But as no such liability existed at common law, but was created by statute and could not be extended beyond its provisions, the act of 1817 was necessary to create such extended liability. The case of *Kelton* v. *Phillips*, 3 Met. Rep. 62 was decided in 1841, upon the act of 1808, and upon a review of all their decisions, and it would seem must place this question at rest in that State. It was held, that the qualified

G. & C. Dauchy *v.* Brown et al.

liability of an individual member of a Manufacturing Company under the act of 1808, was not such a debt as could be proved against the estate of an insolvent debtor. Ch. J. SHAW in delivering the opinion of the court, says: "The construction uniformly "put upon the act of 1808 has been, that it was a new remedy "given by statute, and as the mode of pursuing it was specially "pointed out, that mode must be pursued; that it did not create "a legal liability to be enforced by action." It would be difficult to introduce language more emphatic or applicable. There is then the whole current of Massachusetts authority, in connection with the case in the 5th of Conn. Rep. establishing the principle that such a provision in a charter of incorporation creates a new right and imposes a new liability — one that did not exist and cannot be enforced by action at common law. That the remedy given by the statute is not cumulative, but is the only remedy to which the creditor can resort for payment of his debt. And after much investigation and reflection we can but think this to be the proper construction of the act, and of that provision in the charter of the Pawlet Manufacturing Company, and as best calculated to carry into effect the intention of the Legislature.

This construction naturally arises from the language of the act itself. When the statute provides that an execution issued against the corporation may be levied on any individual thereof, it implies a positive requirement that such proceedings shall be had against the corporation upon which execution can issue, as a preliminary step before proceedings can be had against the stockholders.

The reason and propriety of this is apparent. The indebtedness of the corporation must exist before such liability can arise, and that indebtedness can only be tried in suit against the corporation in such a way, that those upon whom the execution may be levied shall be thereby concluded. If a judgment is obtained against the corporation, not only is the corporation, but all its members are concluded on the question of indebtedness.

But if in this suit judgment should be obtained against the stockholders, although they may be estopped to deny such indebtedness, yet the corporation is not so concluded. This was the opinion of BRISTOL, J., in 3 Conn. Rep. 57, and of SPENCER, Ch. J., in 20 John. Rep. 66. It would be a violation of any rule, to give a construction to a statute, that leads to so gross an inconsistency.

G. & C. Dauchy *v.* Brown et al.

This construction is deemed not only legal, but founded in strict equity. It is equitable as against the creditors for they have preserved for them the liability of those on whose responsibility the claim arose, and there is no equity in enforcing the claim against individuals upon whose credit, as the case finds, the goods were never purchased. If the execution is levied upon members who became such after the debt has accrued, they voluntarily have subjected themselves to that liability, having the means to satisfy themselves of the solvency of the company if they choose to make inquiry. And if they have given but the value of the stock, they have become the purchasers, under an understanding to pay such liabilities, for the value of the stock is found after deducting the liabilities of the corporation. Inhabitants of towns are liable to have their property taken for the debts of the town, though they became members after the debts accrued.

The suggestion which has been made against this construction of the act, that a stockholder may fraudulently dispose of his stock to avoid his liability, can have no controling influence, for it has been too frequently decided to be considered as an open question, that such transfers as against creditors, are absolutely void, that, as to them, they are to be considered still as members, and that an execution can be levied upon their personal and real estate, as if no transfer had been made. Such was the decision in *Marcy* v. *Clark*, 17 Mass. Rep. 330. *Middletown Bank* v. *Magill*, 5 Conn. Rep. 70, and in *Roman* v. *Fry*, 5 J. J. Marsh Rep. 634. That an ample remedy against such fraudulent sales can be found by the creditors in the doctrine of those cases, and in the powers of a court of chancery, is fully sustained upon principle as well as authority.

We can see no propriety either in charging these defendants as partners, for the claim of the plaintiffs from the consideration that the company had a retail store connected with the business under their charter. The case finds that the goods were bought of the plaintiffs by the corporation, were charged to the corporation, and purchased upon its credit and responsibility, and were appropriated to the use of the company.

The liability of the corporation for this claim, has not been disputed, nor can be the liability of its members, when that liability is enforced according to the provisions of the charter, and as the

parties contracted. There is no propriety, therefore, in these plaintiffs putting in issue the question whether that corporation in any of its business transactions, transcended its corporate powers, so long as there is preserved for them that liability upon the faith of which the debt was contracted. Independent of that consideration, also, we perceive no impropriety in connecting the business of such a store with the ordinary business of the corporation. It is necessary and important for the convenience and benefit of their operations, as well as for a successful prosecution of the business for which they were incorporated. And as the business was transacted in the name of the corporation, for corporate benefit, and the claim of the plaintiffs contracted in that capacity, it must in that capacity be enforced.

The result is that the judgment of the county court must be affirmed.