SULLIVAN.

CONNECTICUT RIVER SAVINGS-BANK *v.* FISKE *& a.*

A bill in chancery against the stockholders of a corporation, under Gen.
St., *c.* 136, *s.* 1, is not multifarious, because creditors are joined as
plaintiffs who do not appear to prosecute the suit.

When a demand for payment of a note is made necessary by statute in
order that the debtor may pay it or expose property that may be at-
tached, evidence that he received a letter from the creditor demanding
payment, and that he afterwards told the creditor that he could not
pay it, and omitted to expose property for attachment, without object-
ing to the manner of the demand, is sufficient evidence of a personal
demand.

In a suit against the stockholders of a corporation under the statute, it is
immaterial whether a debt for hired money. for the recovery of which
the suit is brought, was beyond the power of the corporation to con-
tract, in the absence of fraud or collusion on the part of the plaintiffs.
If the corporation received and used the plaintiffs' money, it is also
immaterial whether the debt was contracted by officers properly au-
thorized or not.

It is no objection to the maintenance of such a suit that the plaintiffs
have commenced an action at law against the corporation for the re-
covery of the same debt; nor are they obliged to first exhaust their
remedy against the sureties on the note before calling on the stock-
holders.

BILL IN EQUITY, against the defendants, as stockholders in the
Charlestown Boot & Shoe Company, located in Charlestown.
Facts found by a referee. The company was incorporated in
1871, having for its object a dividend of profits, with a capital
stock fixed at $25,000, of which $19,900 only has been paid in.
April 8, 1872, the plaintiffs loaned the company $5,000, for which
the treasurer of the company gave the company's note, signed by
him as treasurer, and by two of its directors, Dunsmore and Os-
good, as sureties. May 4, 1872, they loaned the company $2,000
more, and May 20, 1872, $5,000 more, receiving notes signed as.
before. In January, 1873, the defendant Willard was elected a
director in the place of Osgood, and at Osgood's request the three
notes were taken up, and a new note was given for $12,000, which
was ante-dated November 1, 1872. The land on which the manu-
factory stood was purchased by the company of the defendant
Dunsmore, the deed containing this provision: " The land to be

used by the Charlestown Boot & Shoe Company for the erection of a shoe manufactory, and for no other purpose whatever." This provision was not known to the stockholders, but the referee found that there was no fraud on Dunsmore's part in inserting it in the deed, and that he subsequently offered to the defendants a deed to the company releasing his rights under this provision.

November 20, 1875, the plaintiffs' treasurer wrote to the company's treasurer demanding payment of the note, the company having suspended business at that time. The latter afterwards called at the plaintiffs' place of business, acknowledged the receipt of the letter, and said he had no funds, and could not pay the note. He made no objection to the form of the demand, and the referee found that it was a sufficient demand. The note not being paid within sixty days thereafter, and no unincumbered personal property being pointed out on which it could be secured, the plaintiffs (April 11, 1876) notified all the defendants, except one, who was out of the state, of the demand on the company, and of the non-payment of the note. At the times these notes were given the company was owing debts exceeding one half of its capital stock then paid in and unincumbered; but the plaintiffs claimed otherwise.

The defendants insisted at the trial that the plaintiffs are indemnified in this suit by the sureties on the note; but the referee found that they are not so indemnified, and that the bank prosecutes this suit for its sole use and benefit. The plaintiffs have also commenced a suit against the company on which its property is attached as security for this note.

No other creditor of the corporation appearing to prosecute any claim against it, the plaintiffs moved for leave to amend the bill by striking out all of the allegations relating to other creditors joining in prosecuting the suit.

The bill prays that the defendants may be decreed to pay the plaintiffs the amount due them.

*Faulkners & Batchelder*, for the plaintiffs.

*Cushing* and *Burke*, for the defendants who appeared. By *c.* 135, *s.* 4, Gen. Sts., no corporation, banks and insurance companies excepted, shall contract debts or incur liabilities exceeding one half of its capital stock then paid in and unimpaired, and of its other property and assets. By *s.* 5, if any corporation violates *s.* 4, the directors are individually liable for the excess of the indebtedness over what might be lawfully contracted, according to *s.* 4. The creation of this debt was *ultra vires* of the corporation and of the directors, and although, according to the case of *Ossipee Mfg. Co.* v. *Canney*, 54 N. H. 295, the stockholders might be estopped as against *bona fide* creditors from making this objection, it is equally clear, that, as against the guilty directors who had violated

the law, they were not estopped.   The directors have by the charter and by law no authority, either expressed or implied, to bind the corporation in violation of law, and they could not create the relation of principal and surety between themselves and the corporation, still less between themselves and the individual stockholders.   There is nothing inequitable or harsh in this doctrine. The directors were the trustees and confidential agents of the corporation and the stockholders.   They had the means of knowing, which the corporation had not, how the accounts stood, and a short consideration of the case makes it exceedingly probable that if the directors had, as they were in law bound to do, refused to contract this debt and make this note, and the affairs of the company had then gone into liquidation, this debt and all others would have been paid from the assets of the corporation.   It does not appear that the corporation ever by any vote ratified or attempted to ratify these doings of the directors.   We suppose that nothing less than the express assent of the stockholders could, as between him and the directors, ratify this act.   The making of this note, then, did not create the relation of principal and surety between the corporation or the stockholders and the directors who signed it.

By *c.* 135, *s.* 21, Gen. Sts., these directors would have no claim against the stockholders for anything which they might be compelled to pay, by virtue of the statute, on this note.   Now, even supposing that the stockholders may be individually liable, which we do not admit, it appears to us that there are some equities of the defendants which ought to be considered, especially as these equities may be duly considered and protected without any loss to the plaintiffs, and we suppose that the court has power under our statute to administer the law under these equities, and protect them.   The doctrine in *Erickson* v. *Nesmith* is, that the stockholders are individually liable as partners.   The rule is correctly stated in 46 N. H. 374 thus : " The rule for contribution among partners is well settled.   If after applying the assets there are still outstanding liabilities, the partners must contribute in proportion to their shares, and if on the other hand a surplus remains, it will be distributed among them in like proportion."   In that case, we understand that there were no assets of the corporation left to administer, and we suppose that the statute is really intended to apply to such cases.   But in this case the plaintiffs had under attachment a large amount of property, the proceeds of which ought to be applied before taking judgment against these defendants.

We have seen that in this case, as between the stockholders and the directors who signed the note, the relation of principal and surety is not created.   There is simply a legal obligation on the part of those directors to pay the plaintiffs, and we say that by the rules of equity the legal remedies ought to be exhausted before this proceeding can be available.   From all that appears, it is obvious that the effect of this proceeding, whether so designed or not, is to

throw upon these defendants a burden from which the law excuses them. It being, as we think, entirely clear that if the corporation should pursue its legal remedies to the end the directors are forbidden by law to enforce any claim for contribution against the defendants, we think it is unjust and unlawful for the plaintiffs to undertake to override the law, and impose upon these defendants a burden from which the law intended to relieve them. The directors who signed this note did not create this indebtedness at the request of the defendants, or for their benefit, and they had no authority by law to make the stockholders liable against them. It is, we believe, a familiar branch of equity jurisprudence by which, when a party has several remedies, some of which cannot be enforced without injury to others, to restrain him from enforcing those until he has exhausted his other remedies.

Story (Eq., s. 640), while insisting upon the right of the creditor as against the debtor to proceed according to his own pleasure, expressly excepts the case where " some peculiar equity springs up from other circumstances." The peculiar equities of this case are, that these directors, joint promisors with the corporation, were the trustees of the stockholders. This principle has been carried so far, that in *Holder* v. *Lafayette, &c., Railway Co.*, 71 Ill. 106, it was held, that the director of a corporation elected treasurer by the board was not entitled to compensation for services as such treasurer, unless the compensation had been previously fixed by by-law or resolution. To the same effect is the case of *Kilpatrick* v. *The Penrose Ferry Bridge Co.*, 49 Penn. St. 118, cited in the foregoing case. The cases are, it is believed, numerous in which the doctrine is held that directors of corporations are trustees of the corporation and of the stockholders. In this case these directors had been guilty of a gross violation of their trust. They had carried on the business of the corporation unlawfully, and it is not alleged or proved that these stockholders had any knowledge of any of these illegal acts. It is expressly provided by law (Gen. Sts., c. 135, s. 21) that the directors, being made liable under that chapter, shall not have any action against the stockholders; and we have seen that these directors have no power to create the relation of principal and surety, in this case, between themselves and the stockholders or the corporation. It is nowhere suggested, and it is not true, that there ever was any difficulty in collecting this note from these joint promisors.

It is also true, that the director Dunsmoor had, when acting as director, accepted a deed from himself containing a condition which rendered the deed practically of little or no market value to the corporation. The master has found that here was no actual fraud, and it may be that this director deserves the imputation of crass ignorance which this finding casts upon him; but we think no man will say that that was not in law such a fraud as would entail all the consequences in regard to his civil liabilities of active

fraud.  It is true, that after the company had failed, the failure being, as we think appears in the case, precipitated by the sudden discovery that the corporation had no marketable title to its land, and its shop and all such fixtures as had become a part of the reality, this director offered, not to the corporation who alone had authority to accept it, but to these stockholders, a deed, which is in the case.

It appears also from the case, as we understand it, that these directors, whose duty it was to call a corporate meeting at which the stockholders might have acted, did not do so.  As no other conceivable reason can be assigned for the course pursued by the plaintiffs, and as it is a familiar presumption that parties intend the natural consequences of their acts, we feel justified in the conclusion that the purpose of the plaintiff corporation in pursuing this roundabout and costly remedy was to shield these directors from liabilities which by the statute were imposed upon them, and also by common law, for their own unauthorized act and breach of trust.  This appears to us to be a peculiar equity, and a very strong one.

This bill was originally framed on the idea that the stockholders were liable only to the extent of the unpaid capital.  With this view they treated that unpaid capital as a fund, of which they prayed an account, and brought their suit for the benefit of all the creditors who would come in.  They propose now to abandon the suit in that form, and to make an amendment, which, in fact, changes the whole frame of the suit.  This we suppose is inadmissible, either under our statute, or by the principles of chancery law.

The defendants, in their answer, object that there is no sufficient allegation of any demand.  The case of *Haynes* v. *Brown*, 36 N. H. 545, and of *Harvey* v. *Chase*, 38 N. H. 272, are in point to show that this objection is vital, and that this suit cannot be maintained without a proper allegation of a proper demand.  It might be that the plaintiffs might now amend their bill, if, when amended, they could prove it; but the master's report shows that no demand, such as is required by law, according to those cases, was ever made.  The master's finding that the demand was sufficient, is his opinion on a matter of law, an opinion not justified by the facts found.  If a combination had been formed by the directors to go through the forms and make the stockholders liable, without any chance to avoid the liability, what was done would have been a very efficient way.  The only demand of the note was by writing to the treasurer.  The demand should have been made personally, according to the cases cited, and should have been a demand that the corporation should pay the note, or expose personal property for attachment.  As it was, there was nothing to give the treasurer to understand that the demand was intended to be preliminary to a suit against the stockholders, and nothing from which the officers

and corporation would understand that it was their duty to call a meeting of the corporation under the statute. It is pretty clear, also, that if any attempt had been made to recover a penalty of the directors for not calling a meeting, it must have failed, because there was no such demand as, under the statute, would make it their duty to do so. Something is said in one of the cited cases about a waiver of legal demands. It may be that any person, knowing all the facts, might waive, so far as he was concerned. But most certainly the officers of the company could not waive' away the rights of individual stockholders.

The defendants also cited *Gray* v. *Coffin*, 9 Cush. 192; *Dauchy* v. *Brown*, 24 Vt. 197; *Cambridge Water-Works* v. *Dyeing, &c., Co.*, 4 Allen 239; *Hicks* v. *Burns*, 38 N. H. 141; Abb. Dig. Corp. 401, s. 292.

FOSTER, J.   I. The defendants claim that the bill is multifarious, as it joins other creditors than the bank. This objection, if it were valid, might be obviated by an amendment· such as the plaintiffs have offered to make; but the bill is not open to the charge of multifariousness. By our statutes, remedies of the character here sought must be prosecuted by bill in chancery. Gen. St., c. 136, s. 1. "A creditor seeking to enforce it must join in the suit all the parties in interest who can be affected by the decree. The suit must be prosecuted for the benefit of all the creditors, and not for a portion of them. All the stockholders who can be reached by the process must be made defendants. The corporation itself must also be joined, and thus, by avoiding a multiplicity of suits, the whole liability of the corporation is apportioned among the solvent stockholders, who can be reached by the process of the court, and by the decree each stockholder is compelled to pay his proportionate share of the debts; and thus in one suit the affairs of the corporation are practically wound up, and its burdens distributed equally among the shareholders." *Hadley* v. *Russell*, 40 N. H. 109; *Erickson* v. *Nesmith*, 46 N. H. 371; *Rice* v. *Hosiery Co.*, 56 N. H. 114, 128; 1 Dan. Ch. 240 : Sto. Eq. Pl., ss. 173, 180.

II. The sufficiency of the demand for payment of the note in question is controverted by the defendants. It is claimed that it should have been made personally, and not by letter, and that it should have been a demand on the company to pay the note, or to expose personal property for attachment. But what is the object of a demand in a case like the present one, and why should it be made personally and not by letter? As indicated by the statute, its object is to afford the officers and stockholders an opportunity to pay the debt, or expose personal property of the company so that it may be attached, and thus to protect the stockholders from a suit against them. Therefore it is said, in *Haynes* v. *Brown*, 36 N. H. 545, that the demand should be personal, in order " that the

person called upon may at once discharge himself" by .paying the debt or surrendering property. But in the same case, Judge *Bell* says, "If the defendant or others had made no objection to the manner of the demand, and had distinctly refused to pay, it would be a waiver of any objection on this account." See, also, *Phelps* v. *Gilchrist*, 28 N. H. 266, 277. In this case the demand was sufficient, because all the practical purposes of its requisition were accomplished, and because the company, by its treasurer, made no objection to the manner in which it was made, but expressly refused to pay the note, or to point out personal property on which an attachment could be made. These facts were sufficient to show a waiver on the part of the company of a more formal demand, and the master has found that the demand was sufficient. *Haynes* v. *Brown*, 36 N. H. 545, 564; *Abbott* v. *Strafford*, 51 N. H. 148, 155; *Norris* v. *Morrill*, 40 N. H. 395; *Phelps* v. *Gilchrist*, 28 N. H. 266, 278; *Gordon* v. *Norris*, 29 N. H. 198, 201; *Rogers* v. *Weir*, 34 N. Y. 463; *Heard* v. *Lodge*, 20 Pick. 53; *Delano* v. *Goodwin*, 48 N. H. 203.

III. The master having found the fact that this suit is prosecuted for the benefit of the plaintiffs alone, and that they are not indemnified by any other party or parties, as was claimed by the defendants, the doctrine of *ultra vires* is no defence in this case. By Gen. Sts., c. 135, s. 4, the corporation was forbidden to contract debts exceeding one half of its capital stock then actually paid in and unimpaired, and of its other property and assets; but in *Ossipee Manufacturing Co.* v. *Canney*, 54 N. H. 295, 322, it is expressly held that debts contracted and liabilities incurred in excess of that amount are binding upon the corporation. In this case the plaintiffs cannot be presumed to have known that the company was exceeding its powers in contracting the debt represented by the note in suit. That was a fact peculiarly within the knowledge of the officers of the company, which the plaintiffs could not ascertain except by a long, complicated, and probably difficult computation. The statutory prohibition of the contraction of debt did not authorize the company to keep without repayment the money it was forbidden to hire. Brice Ultra Vires 717. No ground is shown on which the plaintiffs' knowledge of the excessive indebtedness would be material. The defendant corporation hiring the plaintiffs' money is liable to repay it, whether the hiring was authorized or not. The note is a valid debt of the corporation that gave the note for the money it hired. It is therefore immaterial whether the creation of this debt was *ultra vires* of the company or not.

It is also immaterial whether the debt was contracted by a vote of the company or by its officers, or whether the officers were authorized to contract it. If contracted by the company, it is valid, without reference to the question whether, having received the benefit of it, the company is estopped to deny its validity; and if contracted

by its officers without authority in the premises, their act has been ratified by the company by receiving and enjoying the benefit of the money thus borrowed. *Ossipee Manufacturing Co.* v. *Canney*, 54 N. H. 295, 324; *Rich* v. *Errol*, 51 N. H. 350; *West* v. *Errol*, 58 N. H. 233; *Railroad* v. *Railroad*, 59 N. H. 385.

IV. It is insisted that the plaintiffs having commenced a suit against the company, they are not entitled to the relief sought by this bill until they have exhausted their legal remedy. But the defendants' liability is created by a statute which contains no such limitation or condition. " The officers and stockholders of corporations, except banks, whose object is a dividend of profits, shall be individually liable for the debts and contracts of the corporation in the cases and to the extent specified in this chapter, and not otherwise." Gen. Sts., c. 135, s. 1. " The only remedy to enforce the payment of a debt of a corporation against the individual stockholders thereof shall be by bill in chancery." Gen. Sts., c. 136, s. 1. Upon demand of payment of any debt of a corporation, it is made the duty of the officers and stockholders to discharge it, or to expose unincumbered personal property that it may be attached; and if such property be thus exposed, no suit shall be maintained against the stockholders. Gen. Sts., c. 136, s. 3. The requirements of the statute preliminary to the commencement of this suit have all been complied with. . The debt has not been paid, and unincumbered personal property has not been exposed upon demand.

" Every stockholder, except stockholders in banks, shall be liable for all debts and contracts of the corporation until the whole amount of the capital fixed and limited by such corporation shall have been paid in, and a certificate thereof, under oath, signed by the treasurer and a majority of the directors, has been filed and recorded by the clerk of the city or town where such corporation has its principal place of business," etc. Gen. Sts., c. 135, s. 8. As the conditions upon which the defendants' liability for "all the debts and contracts of the corporation "terminates have never happened, their liability under the statute would seem to be complete. *Hicks* v. *Burns*, 38 N. H. 141, 146. And aside from the statute, upon what equitable ground can it be claimed that this court should compel these creditors to resort to their suit-at-law against the company, and exhaust that remedy, before asserting their claim by this bill in equity ? " Why should a court of equity interfere to stop the election of the creditor as to any of the remedies which he possesses in virtue of or under his contract?" What is there in this case to take it out of " the settled doctrine, that the debtor himself has no right to insist that the creditor should pretermit any of his remedies, or elect between them?" 1 Story Eq., s. 640. The cases to which we are referred relate to bills in equity brought to assist the enforcement of judgments at law, holding that the creditor must show that he has proceeded at law to the

extent necessary to give him a complete title. See *Brinkerhoff* v. *Brown*, 4 Johns. Ch. 671; *Dauchy* v. *Brown*, 24 Vt. 197; *Cambridge Water-Works* v. *Somerville Dyeing, &c., Co.*, 4 Allen 239. And we have not been able to find a case where, under a statute like ours, the creditor has been compelled to resort to an attachment, or to the application of any particular fund or security before availing himself of the right of action prescribed by the statute.

These suggestions also dispose of the defendants' claim that the plaintiffs should first exhaust their remedy against Dunsmore and Willard, who, having no right, it is claimed, to create the relation of principal and surety between themselves and the company, are directly liable to the plaintiffs as principals. Without considering how this might be in a suit between these men and the company, we do not perceive any reason why these plaintiffs, who have acted without any fraudulent or sinister purpose from the beginning, should be compelled to seek their remedy first against the sureties on this note.

The plaintiffs are entitled to a decree.

*Case discharged.*

Stanley and Clark, JJ., did not sit: the others concurred.